800 F.2d 660
 5 Fed.R.Serv.3d 1310
 Spiro GIOTIS, Plaintiff-Appellant,
v.
APOLLO OF THE OZARKS, INC., Red Rocket Fireworks, a
corporation, and Cyril James Warrilow, Lead
Underwriter, Defendants-Appellees,
and
Malcolm GILLESPIE, Defendant and Third-Party Plaintiff-Appellant,
v.
CAPITOL FIREWORKS COMPANY and John Heffinger, Jr.,
Third-Party Defendants.
 Nos. 85-1835, 85-2206, 85-2584 and 85-2656.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 26, 1986.
Decided Sept. 4, 1986.
As Amended Sept. 4, 1986.
Rehearing and Rehearing En Banc Oct. 27, 1986.
 
 Jerome R. Kerkman, Cook & Franke, Milwaukee, Wis., for plaintiff-appellant.
 Wayne M. Yankala, Simarski & Stack, Ltd., Thomas G. Ryan, Minaham & Peterson, Milwaukee, Wis., for defendants-appellees.
 Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and BARKER, District Judge.*
 CUMMINGS, Chief Judge.
 
 
 1
 This appeal comes to us from the district court's grant of motions by defendants Apollo of the Ozarks, Inc. ("Apollo") and Red Rocket Fireworks ("Red Rocket") to dismiss for lack of personal jurisdiction. This case once again requires this Court to explore the limitations of personal jurisdiction over non-consenting, nonresident defendants that are mandated by the constitutional requirement of due process. For the reasons set forth below, we reverse the judgments of the district court granting these defendants' motions to dismiss.
 
 
 2
 * This case arises out of injuries suffered by plaintiff Spiro Giotis ("Giotis") at a Fourth of July party in Wisconsin. Third-party plaintiff Malcolm Gillespie, Jr. ("Gillespie"), a Minnesota resident, had purchased fireworks from Capitol Fireworks Company ("Capitol"), by completing a mail order form that appeared in Capitol's advertisement in the magazine American Rifleman. Capitol shipped the fireworks to White Bear Lake, Minnesota, where Gillespie resided at the time. Gillespie brought the fireworks with him to a party in Hartland, Wisconsin, on July 4, 1982. Gillespie and others discharged the fireworks, and one of the fireworks allegedly struck and injured Giotis who subsequently sued Gillespie, Apollo, Red Rocket and others.
 
 
 3
 Capitol is a distributor of fireworks, and allegedly sold the fireworks to Gillespie that caused the injuries to Giotis. Capitol is an Illinois corporation doing business in Springfield, Illinois. Capitol solicited business and orders through various magazines, including advertising nationwide through the American Rifleman magazine. It was through the advertisement in American Rifleman that Gillespie learned about Capitol and its fireworks. Capitol's advertisement stated that the fireworks would not be sold where prohibited by law, but Capitol sent the fireworks to Gillespie's residence in Minnesota, and both Minnesota and Wisconsin prohibit fireworks.
 
 
 4
 Apollo is a manufacturer of fireworks that may have manufactured and distributed to Capitol the fireworks that caused the injuries to Giotis. Apollo is a Missouri corporation which had a business office and retail outlet in Stanton, Missouri, and another retail outlet in Marshall, Missouri. Both retail outlets were located on the interstate highway. Apollo advertised on billboards placed along the interstate highway in Missouri, in local newspapers, and on local radio. In 1980 and 1981, Apollo's president, Thomas S. Scaman, said that Apollo may have distributed fireworks in fifteen states, including Alabama, Illinois, Indiana, Kansas, Louisiana, Michigan, Mississippi, Missouri, Ohio, Pennsylvania, South Carolina, Tennessee, and Texas, but not in Wisconsin. Scaman at one point characterized Apollo's business as selling mainly to big wholesalers who, in turn, sell to others. Capitol is one of the Illinois distributors to whom Apollo distributed fireworks.
 
 
 5
 Red Rocket is a distributor of fireworks that may have distributed to Capitol the fireworks that caused the injuries to Giotis. Red Rocket is a Missouri corporation with offices in Missouri and Louisiana. Red Rocket sells primarily (85-90% of its sales) to distributors, and during 1982 sold fireworks to distributors in at least ten states, but not in Wisconsin. Red Rocket also sells fireworks directly to consumers through gift shops located at its warehouses and has two signs along the interstate highway near Strafford, Missouri, advertising its retail outlet there.
 
 
 6
 Subsequent to sustaining injuries from the fireworks on July 4, 1982, Giotis filed suit against Gillespie, Apollo, Red Rocket, and various other persons, fireworks producers, and insurance companies. Gillespie filed a third-party complaint against Apollo, Red Rocket, Capitol and others, for contribution and/or indemnification. On December 21, 1984, the district court granted Apollo's motion to dismiss for lack of personal jurisdiction. The district court subsequently granted Red Rocket's motion to dismiss for lack of personal jurisdiction. This appeal followed.
 
 II
 
 7
 Before reaching the merits of this dispute over personal jurisdiction, we must first deal with some procedural preliminaries. More specifically, Red Rocket admits that it failed to raise the defense of personal jurisdiction in its initial answer to Giotis' complaint, as required by Fed.R.Civ.P. 12(h)(1). However, Gillespie, the third-party plaintiff, compounded the problem by never objecting in the court below to Red Rocket's later, untimely motion raising the defense of personal jurisdiction. We are thus faced with the problem of what to do when a party raises for the first time on appeal the opposing party's failure to timely raise the affirmative defense of personal jurisdiction. In short, we must decide whether a party can waive a waiver of the defense of personal jurisdiction.
 
 
 8
 There is no dispute that normally a failure to timely raise the defense of personal jurisdiction waives the defense; Fed.R.Civ.P. 12(h)(1) is unequivocal on this point, and Red Rocket has admitted in its brief to this Court that it failed to timely raise this defense. It is equally clear that as a general rule an argument that is not raised below cannot be raised for the first time by an appellant in this Court. Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826; Gehl Company v. Commissioner, 795 F.2d 1324, 1331-32 (7th Cir.1986); National Metalcrafters v. McNeil, 784 F.2d 817, 825 (7th Cir.1986); Mattingly v. Heckler, 784 F.2d 258, 261 n. 2 (7th Cir.1986); Erff v. Markhon Industries, Inc., 781 F.2d 613, 618 (7th Cir.1986). We have further recognized that there can be a waiver of a waiver, i.e., "a defense of waiver can itself be waived by not being raised." Lynk v. LaPorte Superior Court No. 2, 789 F.2d 554, 565 (7th Cir.1986); see also Jordan v. Kelly, 728 F.2d 1, 4 (1st Cir.1984). However, we have also noted that this waiver rule has its exceptions, and we retain discretion to reach an issue initially raised on appeal in certain situations. Gehl, 795 F.2d at 1331-32. There are several reasons for the general rule requiring issues on appeal to have been raised below: the desire to receive the district court's views on the issue, the need for a factual record to answer the issue, and the desire to avoid having to decide an issue that might not have had to be decided if the district court had had the opportunity to decide the issue. These considerations affect our decision to exercise discretion to reach the issue; for example, we are more likely to reach an issue if it does not require a new factual record. National Metalcrafters, 784 F.2d at 826; Sgro v. United States, 609 F.2d 1259, 1264 n. 8 (7th Cir.1979).
 
 
 9
 In this case, however, because the issue not raised below was Red Rocket's failure to plead the defense of personal jurisdiction in a timely fashion, and the district court proceeded to reach the merits of the personal jurisdiction issue without objections from the parties, Fed.R.Civ.P. 15(b) might be relevant. Rule 15(b) states that when an issue not raised by the pleadings is nevertheless tried by the express or implied consent of the parties, the issue is treated as if it had been raised in the pleadings. If Rule 15(b) were to apply to the instant case, it would mean that Gillespie has impliedly consented to litigate the issue of personal jurisdiction, thereby excusing Red Rocket's failure to raise the issue in a timely fashion.
 
 
 10
 The issue of whether Rule 15(b) applies to the instant case is a difficult question. Rule 15(b) applies to affirmative defenses not properly included in the answer. Trapnell v. Riggsby, 622 F.2d 290, 294 (7th Cir.1980); Wagner v. United States, 573 F.2d 447, 452 (7th Cir.1978); Federal Savings and Loan Insurance Corp. v. Hogan, 476 F.2d 1182, 1186 (7th Cir.1973); see generally W RIGHT & M ILLER, 20 FEDERALPRACTICE AND PROCEDURE Sec. 1492 (1971) (hereinafter referred to as Wright & Miller). This Court and others have used Rule 15(b) to reach a general affirmative defense that was not properly included in defendant's answer in the district court but was not objected to by the plaintiff when the defense was eventually raised and was reached and decided by the district court on the merits. See, e.g., Wagner, 573 F.2d at 452; Bradford Audio Corp. v. Pious, 392 F.2d 67, 73-74 (2d Cir.1968); see generally Wright & Miller Sec. 1494. However, these previous cases involve general affirmative defenses governed by Civil Rules 8(c) and 8(d), whereas the instant case involves one of the seven special affirmative defenses governed by Rule 12(h). The failure to plead any type of affirmative defense can result in a waiver, but Rule 12(h) explicitly governs the waiver of the seven special affirmative defenses, whereas the question of the waiver of other affirmative defenses lacks an explicit textual basis in Rule 12(h) and typically involves more of a balancing test (fair, quick, and inexpensive determination of every action versus prejudice of a delayed motion), giving the district court greater flexibility. Wright & Miller Secs. 1278, 1394. One could argue that Rule 15(b) has been applied to Rule 8(c) general affirmative defenses because of this greater flexibility on the issue of the waiver of general affirmative defenses, and hence should not be applied to the special affirmative defense of personal jurisdiction governed by the explicit commands of Rule 12(h). It should be noted, however, that Rule 15(b) itself fails to make any such distinction between types of affirmative defenses.
 
 
 11
 We need not resolve this difficult issue, however, because Red Rocket failed to timely raise the applicability of Rule 15(b) in this Court. Red Rocket never mentioned Rule 15(b) in their briefs to this Court.[1] Instead, Red Rocket first raised the issue at oral argument. An issue not timely raised in the briefs to this Court is waived, and thus the Rule 15(b) argument is waived for purposes of this appeal.
 
 
 12
 Because Rule 15(b) is waived, our determination of whether Gillespie has waived Red Rocket's waiver of the defense of personal jurisdiction must rest on general waiver considerations outlined above. See supra pp. 663-664. Red Rocket has admitted that it failed to raise in a timely fashion the defense of personal jurisdiction, and so we could easily reach and decide this issue without the benefit of a factual record. Other courts have reached the merits of this and other issues where plaintiff failed to raise it below, even though such conduct by plaintiff would normally constitute a waiver of the issue. See, e.g., Myer v. American Dental Association, 695 F.2d 716 (3d Cir.1982), certiorari denied, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (defendant waived defense of personal jursidiction by not timely raising this defense, even though plaintiff never raised this defect in district court); Pila v. G.R. Leasing, 551 F.2d 941 (1st Cir.1977) (defendant waived defense of insufficient service of process by not timely raising this defense, even though plaintiff never raised this defect in district court). However, regardless of our decision on this waiver issue, we still have to decide the issue of personal jurisdiction with respect to Apollo, and that same legal analysis applies with equal force to whether there is personal jurisdiction with respect to Red Rocket. Given our analysis below of the personal jurisdiction issue, even if we decided that Gillespie has waived Red Rocket's pleading defect, the outcome of the personal jurisdiction issue is no different. We therefore reach the merits of the personal jurisdiction issue with respect to both defendants.
 
 III
 
 13
 A federal district court in a diversity case has personal jurisdiction over a non-consenting, nonresident defendant if and only if a court of the state in which the district court is sitting would have such jurisdiction (in our case Wisconsin). Afram Export Corp. v. Metallurgiki Halyps. S.A., 772 F.2d 1358, 1362 (7th Cir.1985); Deluxe Ice Cream C. v. R.C.H. Tool Corp., 726 F.2d 1209, 1212 (7th Cir.1984). The determination of whether a Wisconsin court would have jurisdiction over a non-consenting, nonresident defendant is a two-step process. The first question is whether defendant is subject to jurisdiction under an applicable Wisconsin state long-arm statute. If not, then there is no jurisdiction, and the inquiry is at an end. If the answer to the first question is yes, however, then the Wisconsin court must determine whether the exercise of jurisdiction under the long-arm statute does not run afoul of the due process requirements of the Fourteenth Amendment. Matter of All-Star Ins. Corp., 110 Wis.2d 72, 76, 327 N.W.2d 648, 650 (1983). A district court sitting in diversity must not only ask these same two questions, but should ask them in the same order, since it is obviously preferable to decide a question on statutory rather than constitutional grounds.
 
 
 14
 In examining the statutory question, the first issue is whether Wisconsin intended to restrict personal jurisdiction over nonresident defendants above and beyond the restrictions imposed by due process. The due process requirements are merely the minimum rights possessed by nonresident defendants, and a state is of course free to provide such defendants with greater rights. See, e.g., Cook Associates, Inc. v. Lexington United Corp., 87 Ill.2d 190, 197-198, 57 Ill.Dec. 730, 733, 429 N.E.2d 847, 850 (1981) ("the boundaries or limits under [the Illinois] statute are not to be equated with the 'minimum contacts' test under the due process clause"),[2] George v. Strick Corp., 496 F.2d 10, 12-13 (10th Cir.1974) (Oklahoma long-arm statute does not extend courts' jurisdiction to the maximum limits permitted by the due process clause). Other states have long-arm statutes that are intended to be co-extensive with the due process clause. See, e.g., Hedrick v. Daiko Shoji Co., Ltd., Osaka, 715 F.2d 1355, 1357-1358 (9th Cir.1983) (Oregon long-arm statute "confers jurisdiction 'to the outer limits' of due process"); Bean Dredging Corp. v. Dredge Technology Corp., 744 F.2d 1081, 1083 (5th Cir.1983) (limits of Louisiana long-arm statute synonymous with those of due process). With this latter type of long-arm statute, the first step becomes superfluous, and a court need address only the due process requirements. Bean Dredging Corp., 744 F.2d at 1083; Hedrick, 715 F.2d at 1357-1358.
 
 
 15
 In the instant case, the relevant long-arm statute is Wis.Stat. Sec. 801.05(4) (1977), which provides in pertinent part that:
 
 
 16
 801.05 PERSONAL JURISDICTION, GROUNDS FOR GENERALLY
 
 
 17
 A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances:
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 (4) LOCAL INJURY: FOREIGN ACT. In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either:
 
 
 21
 (a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or
 
 
 22
 (b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.
 
 
 23
 The district court summarily concluded that "arguably, the statute applies," and then proceeded to step two and the relevant due process considerations. Defendants briefly argue that the state statute is not met in this case, though the arguments they raise could easily be applied to the due process requirements.
 
 
 24
 Asserting personal jurisdiction over defendants is consistent with the language of Wis.Stat. Sec. 801.05(4); the injury occurred in Wisconsin, and as our due process analysis below demonstrates, the fireworks were consumed within Wisconsin in the ordinary course of trade. However, we need not linger over the construction of this statute, in view of our decision that the reach of Wis.Stat. Sec. 801.05(4) is intended to be co-extensive with the requirements of due process. The Wisconsin Supreme Court has practically said as much with respect to the statute's reach. Stevens v. White Motor Corp., 77 Wis.2d 64, 74, 252 N.W.2d 88, 93 (1977) ("The various jurisdictional bases [defined in Wis.Stat. Sec. 801.05] were intended by the legislature to be substantially congruent to the field in which jurisdiction may be exercised consistently with modern notions of due process"); Vermont Yogurt Co. v. Blanke Baer Fruit and Favor Co., 107 Wis.2d 603, 321 N.W.2d 315, 318 (Wis.App.1982) (quoting from Wisconsin Supreme Court cases, "the statute was intended to provide for the exercise of jurisdiction over nonresident defendants to the full extent consistent with the requirements of due process of law"). The Wisconsin Supreme Court has also described the statute as an attempt to codify the constitutionally imposed rules regarding minimum contacts. Lincoln v. Seawright, 104 Wis.2d 4, 10, 310 N.W.2d 596, 599 (1981). Accordingly, this Court will proceed directly to step two to analyze whether the due process requirements were met in this case.
 
 IV
 
 25
 The due process clause requires that in order to assert specific jurisdiction[3] over a non-consenting, nonresident defendant, that defendant must have purposefully availed itself of doing business in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528; Wallace v. Herron, 778 F.2d 391, 395 (7th Cir.1985), certiorari denied, --- U.S. ----, 106 S.Ct. 1642, 90 L.Ed.2d 187; Afram, 772 F.2d at 1362; Snyder v. Smith, 736 F.2d 409, 415 (7th Cir.1985), certiorari denied, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403. Once this purposeful availment has been established, other factors are to be examined to determine whether assertion of personal jurisdiction over defendant comports with "fair play and substantial justice." Burger King, 105 S.Ct. at 2184 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95). These requirements of due process are now addressed in that order.
 
 
 26
 * In determining whether a defendant has purposefully availed itself of doing business in the forum state, mere foreseeability of causing injury in the forum state is not sufficient for the exercise of personal jurisdiction over defendant. Instead, defendant's conduct and contacts with the forum state must have been such that he should have reasonably anticipated being subjected to suit in the forum state. Burger King, 105 S.Ct. at 2183; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490; Snyder, 736 F.2d at 415; Froning, 695 F.2d at 291. Strictly random or fortuitous contacts are insufficient. Burger King, 105 S.Ct. at 2183.
 
 
 27
 In applying this standard, it is instructive to examine the economic context of the suit at issue. Two types of fact patterns often appear. One pattern is where the seller (plaintiff) is suing a buyer (defendant) in the seller's forum, often over a contract that the buyer has breached. See, e.g., Afram; Madison Consulting Group v. South Carolina, 752 F.2d 1193 (7th Cir.1985); Jacobs/Kahan & Co. v. Marsh, 740 F.2d 587 (7th Cir.1984). In this type of situation the buyer often has no other contacts with the seller's forum apart from the particular sale. This single contract between the seller and the nonresident buyer, without more, is not enough to meet the purposeful availment test. Burger King, 105 S.Ct. at 2185; Afram, 772 F.2d at 1362. One contract plus delivery in the seller's forum is also not enough, Afram, 772 F.2d at 1364, Lakeside Bridge & Steel Co. v. Mountain State Construction Co., 597 F.2d 596 (7th Cir.1979), but additional contacts with the forum state may well be enough, Afram, 772 F.2d at 1364 (delivery plus inspection in seller's forum is enough); Jacobs/Kahan, 740 F.2d at 592 (travel by buyer to seller's forum may be enough).
 
 
 28
 The equities are different in the second pattern, presented in the instant case, where the buyer (plaintiff) is suing a seller (defendant) in the buyer's forum. In this type of case the seller often sells to buyers in the forum state other than the particular buyer who is suing the seller, so that the contract at issue is but one of many contacts between the seller and the buyer's forum. This issue often arises where, as in the instant case, the seller is a manufacturer or primary distributor who is at the start of a distribution system. In the first fact pattern described above the only benefit the buyer-defendant realizes from the seller's forum state may be a single sale, whereas in the second fact pattern the seller-defendant, particularly if at the head of a distribution network, realizes the much greater economic benefit of multiple sales in distant forums, of which the purchase by the particular buyer who has brought suit is merely one example. A seller, since it realizes this greater economic benefit, may more easily satisfy the purposeful availment test and be sued by a buyer test and be sued by the seller in the seller's forum. See Afram, 772 F.2d at 1363. This is especially true where the seller is at the head of a distribution network and thus even more clearly has "purposefully availed" itself of the economic benefits of selling to buyers in distant forums.[4] Bean Dredging Corp., 744 F.2d at 1083-1085; Hedrick, 715 F.2d at 1357-1359; Nelson v. Park Industries, Inc., 717 F.2d 1120, 1125 (7th Cir.1983), certiorari denied, 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682. Such a seller, because of intervening levels of distribution, may not have mentally formed a purpose to sell its product to the particular individual buyer who is suing it, but the seller surely has purposefully chosen to sell generally to buyers in the forum state and reaps the economic benefit of doing so. A seller at the head of a distribution network thus satisfies the requisite foreseeability of due process where it "delivers its products into the stream of commerce with the expectation that [these products] will be purchased by consumers in the forum state." Burger King, 105 S.Ct. at 2182 (quoting World-Wide Volkswagen, 444 U.S. at 297-298, 100 S.Ct. at 567-568; see also Keeton v. Hustler Magazine, 465 U.S. 770, 779, 781, 104 S.Ct. 1473, 1480, 1481, 79 L.Ed.2d 790; Honeywell v. Metz Apparatewerke, 509 F.2d 1137, 1144 (7th Cir.1975).
 
 
 29
 The instant case fits well into this second type of fact pattern. Defendants Apollo and Red Rocket are both primary distributors of fireworks in many states, though admittedly not in Wisconsin. Significantly, they both knowingly sell to Capitol, an interim distributor which in turn advertises fireworks nationwide by advertisements in American Rifleman. Capitol's advertising is calculated to reach buyers in distant forums, an important factor in determining whether Capitol has purposefully availed itself of the benefits of doing business in the forum state. World-Wide Volkswagen, 444 U.S. at 295, 100 S.Ct. at 566; Casas v. Royal Bank of Canada, 625 F.2d 139, 144 (7th Cir.1980), Hardy v. Pioneer Parachute Co., 531 F.2d 193, 195 (4th Cir.1976), cited with approval by this Court in Neiman v. Rudolf Wolff & Co., Ltd., 619 F.2d 1189, 1194 n. 6 (7th Cir.1980), certiorari denied, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148; Honeywell, 509 F.2d at 1144. There is no evidence that the defendants were unaware of this scope of Capitol's sales efforts, and in fact Red Rocket admits that the distributors to whom it sold had the capability of distributing the fireworks into any other number of states. The defendants, being upstream from Capitol in the distribution chain, derived the same economic benefits from Capitol's wide scope of sales efforts as Capitol did.
 
 
 30
 The defendants note that Gillespie purchased the fireworks in Minnesota and unilaterally brought them into Wisconsin, where the injury occurred. The argument is that even accepting the above analysis, at most there was sufficient contact with Minnesota but not Wisconsin. We disagree. It is instructive to compare this case to the facts of World-Wide Volkswagen, where one of the defendants was a regional distributor of cars in the New York-New Jersey-Connecticut region. In that case, the plaintiff had bought his car in New York, moved to Arizona, and was injured en route to Arizona when his car exploded in Oklahoma. The Supreme Court ruled that the plaintiff suing in Oklahoma lacked personal jurisdiction over the defendant. However, modifying the facts somewhat, if plaintiff had instead bought his car in Atlantic City, New Jersey, and had been injured in West Hartford, Connecticut, in all likelihood he could have then sued the regional distributor in Connecticut, since the injury occurred within the scope of the sales efforts of the regional distributor. It is this modified version of World-Wide Volkswagen that most clearly resembles the instant case. Both Wisconsin and Minnesota are within the area into which Capitol purposefully directed its sales efforts, and therefore Gillespie's transfer of the fireworks from Minnesota to Wisconsin is of no legal significance with respect to jurisdiction over defendants.
 
 
 31
 The defendants attempt to rebut this argument by noting that Capitol's advertisements prohibited the sale of fireworks in states where they were illegal, and that Wisconsin is such a state. However, the prohibition in Capitol's advertisement was apparently never followed by Capitol. Wisconsin does prohibit fireworks, Wis.Stat. Sec. 167.10 (Supp.1985), but so do many states, including Minnesota, Minn.Stat. Secs. 624.20-624.25 (1964 & Supp.1986), and yet Capitol did not hesitate to ship fireworks to Gillespie in Minnesota. Defendants cannot deny having received the economic benefits of doing business in states where fireworks are illegal when there is no indication that Capitol's self-imposed prohibition was followed by that firm or its buyers. Since both Apollo and Red Rocket have purposefully availed themselves of doing business in Wisconsin, the first part of the two-part test is met.
 
 B
 
 32
 Turning to the second part of the test, the assertion of personal jurisdiction over the defendants comports with fairness and justice. Several factors justify this result. First, the product was used in Wisconsin. Bean Dredging Corp., 744 F.2d at 1085. Second, the alleged defects surfaced in Wisconsin. Id. Third, a Wisconsin resident was injured, and Wisconsin has a compelling interest in regulating the conduct of manufacturers that expose Wisconsin residents to the hazards of defective products. Id.; Hedrick, 715 F.2d at 1359.
 
 
 33
 Because Wisconsin has personal jurisdiction over defendants Apollo and Red Rocket, the judgments of dismissal are reversed.[5]
 
 
 34
 BARKER, District Judge, concurring in part and dissenting in part.
 
 
 35
 I concur with the majority's resolution of the "procedural preliminaries" discussed in section II of the majority opinion; however, I respectfully dissent from the reversal of the district court's dismissal of the claims against Apollo and Red Rocket for lack of personal jurisdiction. I believe that allowing those manufacturers to be sued in Wisconsin violates due process.[1]
 
 
 36
 The majority correctly analyzes the due process inquiry as involving a two step process. First, a court must determine whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Then, "[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " Burger King Corp. v. Rudzewicz, --- U.S. ----, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985), citing International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). Because I believe that Apollo and Red Rocket could not reasonably have anticipated being sued in Wisconsin and could never reasonably be found to have "purposefully established minimum contacts" in Wisconsin and because I believe that the assertion of personal jurisdiction on the present facts is an unnecessary, unwarranted, and undesirable extension of the jurisdiction of the district court, I would affirm the district court's decision to dismiss the action against both defendants.
 
 
 37
 In determining whether Apollo and Red Rocket are connected with Wisconsin in such a way that they should reasonably anticipate being haled into court there, it is helpful to consider the guidance recently given by the Supreme Court on the subject of "purposeful availment." In Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the plaintiff brought an action alleging that the defendant had breached his franchise obligations by failing to make the required payments at the plaintiff's place of business in Miami, Florida. The defendant, a Michigan citizen and resident, had never been physically present in Florida. However, he had purchased equipment from plaintiff in Florida; he had negotiated the terms of the franchise with plaintiff's Florida office; and, following default, he had engaged in prolonged negotiations by mail and telephone with plaintiff's Florida office.
 
 The Supreme Court first explained that the
 
 38
 "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person." Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum state. Thus where the defendant "deliberately" has engaged in significant activities within a state, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.
 
 
 39
 Id. 105 S.Ct. at 2183-84 (citations omitted). Then, noting the defendant's deliberate efforts to reach out beyond Michigan to negotiate with a Florida corporation for the purchase of a long-term franchise and his acceptance of a 20-year relationship that envisioned continuing and wide-reaching contacts with plaintiff in Florida, the Court concluded that the defendant's contacts could not be viewed as "random," "fortuitous," or "attenuated." The Court further concluded that the defendant's failure to make the required payments to Miami caused foreseeable injuries there. As such, it was reasonable for the defendant to expect to be sued in Florida.
 
 
 40
 Though Burger King involved a determination of the limits of personal jurisdiction over a nonresident defendant who had allegedly breached a contract, the Supreme Court's general explication of the "purposeful availment" requirement is equally applicable to suits in which plaintiffs assert other theories. Several of the cases cited by the Court in support of its explication involved noncontractual claims. See, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (torts); Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (domestic relations).
 
 
 41
 In the present case, the contacts between Wisconsin and the alleged tortfeasors, Apollo and Red Rocket, clearly do not suggest the requisite purposeful availment necessary to satisfy due process.
 
 
 42
 Assuming as we do that both Apollo and Red Rocket supplied the fireworks to Capitol that caused the injuries to Giotis in Wisconsin, the fact that the fireworks were in Wisconsin at all was the result of the unilateral activity of a third person, namely, Malcolm Gillespie, Jr. in taking the fireworks there. Neither Apollo nor Red Rocket distributed fireworks in Wisconsin. In addition, there is no evidence in the record that Capitol distributed fireworks in Wisconsin. In fact, no sale at all occurred in Wisconsin. Capitol's nationwide advertising, which was the defendants' only possible "purposeful" contact with Wisconsin does not, in itself, constitute an action by the defendant capable of being construed as a contact which "create[s] a 'substantial connection' with the forum state." See Burger King, 105 S.Ct. at 2184.
 
 
 43
 It was Gillespie's decision to transport and act of transporting the fireworks to a party in Wisconsin that resulted in there being a connection between the defendants and Wisconsin. Apollo and Red Rocket did not deliberately engage in any significant activities in Wisconsin. Neither by their express intentions nor through their acts have Apollo and Red Rocket created any "continuing obligations" between themselves and Wisconsin residents. All that can be established is that they deliberately chose to sell fireworks to a distributor in Illinois who advertises nationwide. Apollo and Red Rocket have done nothing to avail themselves of the privilege of conducting business in Wisconsin, they have had no contacts other than those random and fortuitous contacts created by Malcolm Gillespie, and they had no reason to anticipate being haled into court there. In my opinion due process dictates that they should not be haled into court there.
 
 
 44
 In support of its contrary conclusion that the due process clause is not violated by allowing Apollo and Red Rocket to be sued in Wisconsin, the majority relies heavily upon a comparison of the facts in this case to a modified version of the facts in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In attempting to determine if World-Wide Volkswagen controls the outcome of this case, the majority creates a factual scenario in which the plaintiff bought his car in Atlantic City, New Jersey, was injured in West Hartford, Connecticut, and sued a regional distributor of that car in Connecticut, suggesting that those circumstances would most clearly resemble the facts in the present case and concluding under those facts and due process standards, that the suit could properly be brought in Connecticut.
 
 
 45
 At the risk of over-extending the majority's analysis, let me offer what I believe to be a more accurate modification of the World-Wide Volkswagen facts as applied to this case. Assume a person purchased from a New Jersey distributor a car which had been manufactured in Michigan. From there, the purchaser drove the car to his friend's house in Connecticut. While the purchaser was driving the car in Connecticut, it malfunctioned and injured the friend. The friend then filed a suit in Connecticut against the Michigan manufacturer. This scenario, I believe, more closely resembles the present case for the reason that in this scenario, as in the instant case, the plaintiff was not the purchaser of the allegedly defective product and the defendant was not the distributor, but was instead the manufacturer of the product.
 
 
 46
 From this set of facts, it is apparent that, pursuant to World-Wide Volkswagen, a court in Connecticut would not have personal jurisdiction over the defendant. The manufacturer of the product cannot be deemed to have purposefully positioned itself in a state where an injury occurs when that state where the injury occurs is other than the place where the product was purchased, and the injury is suffered by a friend of the actual purchaser of a product. An injury under these circumstances does not give rise to sufficient contacts by the alleged tortfeasor with the place of the injury to permit personal jurisdiction over him. In fact, it is difficult to imagine contacts which could be more random and fortuitous than the defendants' contacts with Wisconsin which occurred only as a result of the independent decision of Gillespie to transport the fireworks into Wisconsin. The manufacturers and distributors of the fireworks did not encourage or solicit that decision by Gillespie, they did not participate in that decision, nor did they derive any economic benefit from that decision. It was a decision made entirely of Gillespie's own volition. Yet, the majority holds that Apollo and Red Rocket can be sued in such a place and that their constitutional entitlement to due process is not violated or otherwise compromised by requiring them to defend in a forum over which they had virtually no say-so or choice.
 
 
 47
 I believe the court's holding today will effectively abolish any due process restrictions on personal jurisdiction over manufacturers and distributors of moveable products. Indeed, the holding suggests that, because manufacturers and primary distributors are at the head of the distribution system, they should reasonably expect to be sued in any jurisdiction into which a purchaser may transport their product.
 
 
 48
 The majority has cited a case, decided by another panel of this court, which addresses personal jurisdiction in the context of a moveable product. See Nelson v. Park Indus., Inc., 717 F.2d 1120, 1125 (7th Cir.1983), cert. denied, 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984). In Nelson, plaintiff, who was a minor, sought recovery for burns sustained when the shirt she was wearing ignited after contact with a cigarette lighter flame. The shirt was manufactured in Hong Kong, purchased by a purchasing agent in Hong Kong on behalf of the retail seller, and sold at the retailer's store in Wisconsin. The district court granted the manufacturer's and the purchasing agent's motions to dismiss for lack of personal jurisdiction. This court reversed. Although the case supports a conclusion that sellers at the head of a distribution network may more easily satisfy the "purposeful availment" test, it is distinguishable on its facts from the present case, as explained below, and does not compel us to conclude that personal jurisdiction exists here.
 
 
 49
 In Nelson, following the general holding that the relevant scope of the foreseeable market served by manufacturers and primary distributors is often broader for them than it is for sellers further down the stream of commerce, the panel recognized that the crucial inquiry remained: whether under that distribution system it could be said that the movants' conduct and their connection with Wisconsin were such that they should reasonably have anticipated being haled into court there. In its analysis, the court focused primarily on whether the movants were aware that they were indirectly serving and deriving economic benefits from the national retail market established by the retailer. After finding sufficient evidence in the record to establish such knowledge, the court concluded that, on that basis, the movants should have reasonably anticipated being haled into court in a forum where the distribution system brought a shirt that allegedly caused injury.
 
 
 50
 The Nelson court's ability to find evidence of the defendants' knowledge of the distribution scheme distinguishes it from the facts of the present case. In the case at bar, there is no evidence in the record that the defendants were aware of the scope of Capitol's sales efforts, and it is my view that without such evidence, Apollo and Red Rocket should not be held to answer in a suit that was filed in a forum into which their product was randomly or fortuitously transported.
 
 
 51
 Recognizing the significance of the defendants' knowledge of the distribution scheme as a factor in determining whether the defendants should reasonably anticipate a lawsuit in a given forum, the majority opinion holds: "[T]here is no evidence that the defendants were unaware of [the] scope of Capitol's sales efforts, and in fact Red Rocket admits that the distributors to whom it sold had the capability of distributing the fireworks into any other number of states." However, in reaching this conclusion, the majority erroneously shifts the burden of establishing jurisdiction to the defendants, requiring them to prove their state of knowledge concerning the scope of Capitol's sales efforts at the time of the alleged injury.
 
 
 52
 A plaintiff has the burden of establishing jurisdiction. O'Hare Int'l Bank v. Hampton, 437 F.2d 1173, 1176 (7th Cir.1971). Since there is no evidence that the defendants were aware or unaware of the scope of Capitol's sales efforts, the only legitimate inference we should fairly draw is that there is no factual basis to extend jurisdiction over the defendants.
 
 
 53
 Finally, Red Rocket's admission regarding its customers' distribution capability is, at best, ambiguous, since many distributors are capable of selling products in any state, yet choose to sell only in specified regions. Therefore, I am unwilling to conclude that the "admission" is sufficient evidence of Red Rocket's knowledge of Capitol's distribution territory such that Red Rocket should be subject to a lawsuit in any state within that territory. In any event, the admission cannot be attributed to Apollo; therefore, no evidence exists in the record regarding Apollo's knowledge.
 
 
 54
 For all of the foregoing reasons, I respectfully dissent from section IV of the majority opinion and would affirm the district court's dismissal.
 
 
 
 *
 The Honorable Sarah Evans Barker, District Judge for the Southern District of Indiana, is sitting by designation
 
 
 [1]
 While Red Rocket Fireworks' February 28, 1986, Circuit Rule 11 letter cites Rule 15(b) of the Federal Rules of Civil Procedure, that rule only permits the citation of additional authority and not a new argument
 
 
 [2]
 For many years the Illinois long-arm statute, the first comprehensive long-arm statute and a model for many other states, was viewed as an attempt to exercise jurisdiction to the fullest limits permitted by the Constitution. Wright & Miller Sec. 1068. The Illinois Supreme Court appeared to say precisely this in Nelson v. Miller, 11 Ill.2d 378, 389, 143 N.E.2d 673, 679 (1957). Yet in recent cases, the Illinois Supreme Court has backed way from this statement, and has said that the statute will no longer necessarily be construed as co-extensive with due process requirements. See Froning & Deppe, Inc. v. Continental Illinois, 695 F.2d 289, 295 (7th Cir.1982) (Eschbach, J., concurring) (cites pertinent recent Illinois Supreme Court cases)
 
 
 [3]
 A state exercises "specific jurisdiction" over a defendant when it "exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 415 n. 8, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404. A state exercises "general jurisdiction" over a defendant when it "exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." Id. 466 U.S. at 415 n. 9, 104 S.Ct. at 1872 n. 9; Burger King, 105 S.Ct. at 2182 n. 15. The former type of personal jurisdiction is involved in the instant case. See generally Brilmayer, How Contacts Count: Due Process Limitations on State Court Jurisdiction, 1980 S.Ct.Rev. 77
 
 
 [4]
 The differing implications of these two basic fact patterns help explain the different outcomes in Lakeside and Nelson
 
 
 [5]
 Since Gillespie has not made any arguments regarding the district court's dismissal of Red Rocket's insurer, Cyril James Warrilow, the dismissal of this insurer is affirmed
 
 
 [1]
 At the outset, I must note that I am not entirely convinced that the facts in this case support a conclusion that the requirements of the Wisconsin long-arm stautte are satisfied. There is, minimally, a substantial question as to whether the fireworks were used or consumed within Wisconsin "in the ordinary course of trade." However, because I believe that holding Apollo and Red Rocket to answer this lawsuit in Wisconsin clearly violates due process, I accept the district judge's view that jurisdiction in all likelihood exists under the Wisconsin statute