John **LAPEIRE** and Nan F. Lapeire

v.

**VOLKSWAGEN AG, Audi of America, Inc., World–Wide Volkswagen Corp. and Traynor Motors, Inc.**

Civ. A. No. 88–2979.

United States District Court, E.D. Pennsylvania.

Nov. 2, 1988.

Robert A. Godwin, Robert A. Godwin and Associates, Newtown, Pa., for plaintiffs.

Ronda Hill Wilson, Anthony Frayne, Philadelphia, Pa., for World–Wide Volkswagen Corp.

Frank J. Perch, III, Pepper Hamilton & Scheetz, Philadelphia, Pa., for defendants, Volkswagen AG Audi of America, Inc. and Traynor Motors, Inc.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, Senior District Judge.

Plaintiffs, John Lapeire and Nan F. Lapeire, are residents of Bucks County Pennsylvania, and have brought his action to recover for personal injuries sustained as a result of an alleged spontaneous acceleration of their 1984 Audi 5000S on April 11, 1986. The defendants in this suit are Volkswagen AG, the German manufacturer, Audi of America, Inc., its American subsidiary, World–Wide Volkswagen Corporation (World–Wide), a regional distributor of Audis, and Traynor Motors, Inc., the car dealer who sold the car to the plaintiffs. Defendant World–Wide Volkswagen Corporation has acknowledged that defendants intended to sue them, but have wrongly named them as "World–Wide, Inc." In any event, World–Wide Volkswagen Corporation has acknowledged that it has received service of process, and its counsel has stated that service under the name "World–Wide Volkswagen Corporation" is unnecessary. However, defendant World–Wide has challenged the power of this court to assert personal jurisdiction over it, and thus has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons stated below, defendant World–Wide Volkswagen's motion to dismiss for lack of personal jurisdiction will be denied.

World–Wide is a New York corporation. It is a regional distributor of Audi Motor vehicles and accessories and is in the business of selling and marketing these products in the states of New York, New Jersey, and Connecticut. These sales by World–Wide are conducted pursuant to an agreement with Volkswagen AG. The dealers serviced by World–Wide ultimately sell vehicles to consumers; World–Wide does not sell any vehicles directly to consumers.

Plaintiffs purchased their vehicle from Traynor Motors, Inc., a retailer with its principal place of business at 2269 Post Road, Fairfield, Connecticut, on June 12, 1984. At the time of the purchase, Traynor had a reasonable expectation that the vehicle would be operated in Pennsylvania.[1]

A federal district court in a diversity case has personal jurisdiction over a nonconsenting, nonresident defendant if a court of the state in which the district court is sitting would have such jurisdiction. *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 664 (7th Cir.1986). The plaintiff asserts that this court has jurisdiction pursuant to 42 Pa.Cons.Stat.Ann. § 5322. The relevant sections state:

(a) General rule.—A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting

---

[1]. Plaintiffs' counsel has represented that Traynor Motors registered plaintiffs' vehicle with the Motor Vehicle Department of the Commonwealth of Pennsylvania. Also, plaintiffs assert that dealers within World–Wide's network generally register vehicles sold to Pennsylvania residents with the Motor Vehicle Department of the Commonwealth of Pennsylvania. *See* Plaintiff's Reply to Motion to Dismiss Complaint at 6.

business for the purpose of this paragraph:

. . . .

(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

. . . .

(4) Causing harm or tortious us injury in this Commonwealth by an act or omission outside this Commonwealth.

(b) Exercise of full constitutional power over nonresidents.—In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

Section 5322(a)(4) provides a basis for jurisdiction in this case since plaintiff alleges that an act or omission outside Pennsylvania caused harm inside Pennsylvania. Also, section 5322(b) establishes an independent basis for jurisdiction because I conclude that the assertion of jurisdiction over World–Wide comports with the due process clause. Therefore, the statutory analysis in this latter respect is coextensive with the due process analysis set forth below.

The due process clause requires that in order to assert specific jurisdiction over a non-consenting, nonresident defendant, that defendant must have purposefully availed itself of the benefits of the forum state. Once purposeful availment has been established, the court must determine whether the assertion of personal jurisdiction over defendant comports with traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

In determining whether a defendant has purposefully availed itself of doing business in the forum state, the foreseeability of causing injury in the forum state must have been such that he should have reasonably anticipated being subjected to suit in the forum state. *See id.* Strictly random or fortuitous contacts are insufficient.

I find that the purposeful availment test has been satisfied in this instance. First, it is certainly foreseeable that defendant World–Wide might be haled into court in Pennsylvania. World–Wide consistently services New York, New Jersey and Connecticut, and two of these states directly border Pennsylvania. It is clearly foreseeable, given the fluid nature of commerce in metropolitan areas and the advertising done by network dealers in Pennsylvania, that Pennsylvania residents will buy vehicles from dealers serviced by defendant World–Wide.

World–Wide as a regional distributor has availed itself of the benefits of Pennsylvania law. World–Wide obtains economic benefits by delivering cars to dealers within its three-state network. The more cars sold by the dealers, the greater the benefit to World–Wide. The plaintiff has submitted exhibits showing advertisements placed in Pennsylvania newspapers by New Jersey Audi dealers. Thus, the dealers within defendant World–Wide's network have actively solicited business in Pennsylvania. This solicitation, and ultimately sales to Pennsylvania residents, directly benefits defendant World–Wide. The sale directly at issue here was made by a Connecticut dealer to a Pennsylvania resident. The dealer, Traynor Motors, had reason to know that the vehicle would ultimately be used in Pennsylvania. World–Wide directly benefited from this sale because the Connecticut dealer was within its sales network which meant that part of the economic benefit of the sale would accrue to World–Wide. A seller at the head of a distribution network thus satisfies the requisite foreseeability of due process where it "delivers its products into the stream of commerce with the expectation that [these products] will be purchased [and used] by consumers in the forum state." *Burger King*, 471 U.S. at 473, 105 S.Ct. at 2182

(quoting *World–Wide Volkswagen*, 444 U.S. at 297–98, 100 S.Ct. at 567–68). Here, World–Wide is delivering products to dealers in New York, New Jersey, and Connecticut, thus putting products into the stream of commerce with the expectation that these products will be purchased in Pennsylvania. *Cf. Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961).

In *Giotis v. Apollo of the Ozarks, Inc.*, the Seventh Circuit dealt with a case similar to the one presented here. *See* 800 F.2d 660. There, a manufacturer had supplied fireworks that were distributed by another party in foreign jurisdictions. The court held that the manufacturer had purposefully availed itself of the benefit of doing business in one of the foreign jurisdictions, even though the manufacturer had not directly sold to that jurisdiction. The court stated:

> [T]he seller-defendant, particularly if at the head of a distribution network, realizes the much greater economic benefit of multiple sales in distant forums, of which the purchase by the particular buyer who has brought suit is merely one example. A seller, since it realizes this greater economic benefit, may more easily satisfy the purposeful availment test.... This is especially true where the seller is at the head of a distribution network and thus even more clearly has "purposefully availed" itself of the economic benefits of selling to buyers in distant forums. Such a seller, because of intervening levels of distribution, may not have mentally formed a purpose to sell its product to the particular individual buyer who is suing it, but the seller surely has purposefully chosen to sell generally to buyers in the forum state and reaps the economic benefit of doing so.

*Giotis*, 800 F.2d at 667 (citations omitted). The defendant World–Wide, being upstream in the distribution chain, derived the same economic benefits from sales made by those in the New York, New Jersey, and Connecticut network, and in particular from the sale by Traynor Motors, as the direct sellers did.

World–Wide argues that *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), controls here and thus it should not be subject to suit in Pennsylvania. I disagree. It is instructive to compare the facts of *Woodson* to this case. In Woodson, World–Wide was again the defendant and was challenging the personal jurisdiction of the court. There, the plaintiff had purchased his car in New York, and was in route to Arizona when his car exploded in Oklahoma. The suit was brought in Oklahoma and the Supreme Court concluded that Oklahoma lacked personal jurisdiction. Oklahoma, however, had no other connection to the suit. There World–Wide had no appreciable or on-going sales contacts with Oklahoma, nor was there any evidence that dealers in World–Wide's regional network advertised in Oklahoma or sold cars to Oklahoma residents on any consistent basis. Indeed, the Supreme Court in *Woodson* stated:

> Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, *directly or indirectly,* the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

444 U.S. at 297, 100 S.Ct. at 567 (emphasis added). Here, World–Wide attempted, both directly and indirectly, to sell cars to Pennsylvania consumers. Thus it is not unreasonable to subject World–Wide to suit in Pennsylvania. I conclude that defendant World–Wide purposefully availed itself of the benefits of Pennsylvania's laws.

Turning to the second part of the personal jurisdiction test, I now conclude that the assertion of jurisdiction over World–Wide does not violate traditional notions of fair play and substantial justice. The vehicle at issue here was used in Pennsylvania, caused injury in Pennsylvania, and Pennsylvania has a compelling interest in regulating the conduct of those who expose

Pennsylvania residents to the hazards of defective products. Also, permitting World–Wide to be sued in Pennsylvania is not unduly burdensome.

In modern day commerce, involving national and international distribution of manufactured goods, products frequently pass through various layers of distribution before reaching the ultimate consumer. Frequently manufacturers sell to regional distributors, who in turn sell to dealers. The dealer sells to the consumer. Each is ordinarily at least nominally independent from the other. Where a consumer is injured by an allegedly defective product, the law should be such as to permit the injured party to join all parties in the normal distributive chain who may be liable, in a single law suit and in a single forum, as a matter of logical judicial economy as well as convenience. Under existing law, this may not always be possible, but at least in this case, the three-state distributor, World–Wide, has been properly joined and is subject to personal jurisdiction in this court.

In sum, I conclude that the defendant World–Wide Volkswagen has purposefully availed itself of the benefits of the laws of Pennsylvania, that subjecting it to suit in Pennsylvania would not violate traditional notions of fair play and substantial justice, and thus that assertion of jurisdiction does not violate the due process clause. Since the Pennsylvania long-arm statute is meant to extend to the limit permitted by due process, the statutory basis for jurisdiction over World–Wide is also established on a second independent basis, namely, 42 Pa. Cons.Stat.Ann. § 5322(b).

Thus, defendant World–Wide's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) will be denied.