744 F.2d 1081
 BEAN DREDGING CORPORATION, Plaintiff,
v.
DREDGE TECHNOLOGY CORPORATION, et al., Defendants-Appellants,
v.
ROGERS-OLYMPIC CORPORATION, Defendant-Appellee.
AMERICAN EMPLOYERS INSURANCE COMPANY, et al., Plaintiffs,
v.
DREDGE TECHNOLOGY CORPORATION, et al., Defendants-Appellants,
v.
ROGERS-OLYMPIC CORPORATION, Defendant-Appellee.
 No. 83-3693
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 20, 1984.
 Lemle, Kelleher, Kohlmeyer & Matthews, Gerald J. Talbot, New Orleans, La., for Abex Corp.
 Blue, Williams, Buckley, Robert F. Spangenberg, C.T. Williams, Jr., Mitairie, La., for Jorgenson Steel Corp.
 Phelps, Dunbar, Marks, Claverie & Sims, James H. Roussel, Bettye A. Barrios, New Orleans, La., for Dredge, IHC Smit & McMullen.
 Thomas J. Wyllie, Edward D. Markle, New Orleans, La., for Houston Systems.
 Larry Boudreaux, Thibodaux, La., for appellee.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before REAVLEY, POLITZ and HIGGINBOTHAM, Circuit Judges.
 REAVLEY, Circuit Judge:
 
 
 1
 Dredge Technology Corp. and others appeal the dismissal of their actions against Rogers-Olympic Corp. for want of personal jurisdiction. We reverse.
 
 
 2
 Rogers-Olympic was served by means of the Louisiana Long-Arm Statute. La.Rev.Stat.Ann. Sec. 13:3201 (West 1968 & Supp.1984). It is a foreign corporation that operates a manufacturing plant in the State of Washington. At that plant, steel castings were made and then sold to Abex Corporation, which used them in the manufacture of cylinders in California. The cylinders ultimately served as parts of a dredge constructed by Avondale Shipyard, Inc. in Louisiana. Bean Dredging Corporation initiated this litigation with the claims that the suppliers and manufacturers of the dredge were negligent and strictly liable for its defects. Dredge Technology and other defendants brought third-party actions against Rogers-Olympic.
 
 
 3
 Rogers-Olympic, in the State of Washington, contracted by purchase order through the mail with Abex for the production of the steel castings in question. Abex used the castings in manufacturing the cylinders in the State of California. Rogers-Olympic had no knowledge of the end-product into which the castings would be incorporated. Rogers-Olympic never sold directly to a company in Louisiana and did not know whether any castings went to Louisiana, nor did Louisiana personnel travel to Washington to negotiate with Rogers-Olympic. The company did not solicit contracts or other work in Louisiana and did not own property in Louisiana.
 
 
 4
 Rogers-Olympic employs approximately 90 persons. It had more than $8,000,000 in total sales in 1982. It produces between 1,000 and 15,000 castings each year. It has major customers in Pennsylvania, Oregon, Arizona, California, Kansas, New York, Massachusetts, Michigan, and Texas. The customers in these states use Rogers-Olympic's steel castings in rock crushers, mining equipment, natural gas compressors, and water valves. Rogers-Olympic also manufactures castings for armored vehicles, and these castings are sold to the United States Army. Mervyn Stithem, president of Rogers-Olympic Corporation, testified that the castings for military vehicles might end up anywhere in the United States. When deposed, Mr. Stithem evinced an awareness that even his company's commercial products, once they entered the stream of commerce, might go virtually anywhere:
 
 
 5
 Q. And once that casting leaves your plant in Washington, it could really go anywhere in the United States, couldn't it?
 
 
 6
 A. Yes.
 
 
 7
 Q. It could be incorporated in just a variety of different types of equipment or applications, couldn't it?
 
 
 8
 A. Yes.
 
 
 9
 Q. And it could be located or used really in any state in the United States, couldn't it?
 
 
 10
 A. Yes.
 
 
 11
 Q. Including the State of Louisiana?
 
 
 12
 A. Yes.
 
 
 13
 Rogers-Olympic moved to dismiss for lack of personal jurisdiction, and the district court dismissed. The issue presented on this appeal is whether Rogers-Olympic had sufficient minimum contacts with the State of Louisiana for purposes of personal jurisdiction under the Louisiana Long-Arm Statute and the Due Process Clause.
 
 
 14
 EXERCISE OF IN PERSONAM JURISDICTION UNDER LOUISIANA'S
 
 LONG-ARM STATUTE
 
 15
 This court has considered the Louisiana Long-Arm Statute in the past, and noted that it extends to the limits of due process. "The Louisiana Long-Arm Statute is to be interpreted liberally in favor of finding jurisdiction ... and is to extend to the full limits of due process under the fourteenth amendment." Quasha v. Shale Development Corp., 667 F.2d 483, 486 (5th Cir.1982) (citing, inter alia, Austin v. North American Forest Products, 656 F.2d 1076, 1089 (5th Cir.1981); Standard Fittings Co. v. Sapag, S.A., 625 F.2d 630, 639-41 (5th Cir.1980), cert. denied, 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981)). Normally, there are two components to the exercise of jurisdiction over a nonresident: first, the state's long-arm statute must apply; and second, its application in the particular case must comport with the due process requirements of the Fourteenth Amendment. DeMelo v. Toche Marine, Inc., 711 F.2d 1260, 1264-1265 (5th Cir.1983). Given, however, the synonymy between the limits of the Louisiana Long-Arm Statute and those of due process, it becomes necessary to consider only whether the exercise of jurisdiction over a nonresident defendant comports with due process.
 
 Due Process Requirements
 
 16
 For due process requirements to be met in a court's assertion of personal jurisdiction, the nonresident defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)); DeMelo v. Toche Marine, Inc., 711 F.2d at 1270. To make this determination, the court must first consider whether the defendant purposefully availed itself of the benefits and protection of the forum state's laws; and second, whether the state has any special interest in providing a forum for the suit, taking into consideration the relative conveniences and inconveniences of the parties. Austin v. North American Forest Products, 656 F.2d at 1089; Standard Fittings Co. v. Sapag, S.A., 625 F.2d at 641-43.
 
 A. "Minimum Contacts" With Louisiana
 
 17
 Rogers-Olympic, a Washington corporation, constructed steel castings used in the manufacture of hydraulic cylinders by the Remco Division of Abex in California. The cylinders, with the Rogers-Olympic steel castings incorporated into them, were eventually used in the dredge constructed by Avondale for Bean's use in Louisiana. Appellants herein argue the "stream of commerce" theory as developed in part in World-Wide Volkswagen v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
 
 
 18
 We note initially that this court has emphasized that the number of contacts with the forum state is not determinative of the "minimum contacts" test; rather, "the contacts must support an inference that the nonresident defendant purposefully availed himself of the benefits of the forum state ... and ... even activities outside one state can fulfill this requirement if they have reasonably foreseeable consequences within the state." Quasha v. Shale Development Corp., 667 F.2d 483, 488 (5th Cir.1982). In expounding this concept of purposeful availment of a state's laws, the Supreme Court in World-Wide Volkswagen stated:
 
 
 19
 When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," ... it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence, if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.
 
 
 20
 444 U.S. at 297-98, 100 S.Ct. at 567. In World-Wide Volkswagen, the two defendants held not to be amenable to Oklahoma jurisdiction were at the end of the automobile's distribution system. The Court held that due process would not permit Oklahoma to impose jurisdiction over the local retailer of the automobile in New York, or indeed over the New York automobile wholesale distributor who sold to retailers in New York, Connecticut, and New Jersey. Id. at 289, 298, 100 S.Ct. at 563, 567. Yet, in dictum, the Court distinguished the situation of the manufacturer, the entity placing the product into the stream of commerce. Id. at 297-98, 100 S.Ct. at 567.
 
 
 21
 The Seventh Circuit has had occasion to construe and apply the World-Wide Volkswagen dictum in Nelson v. Park Industries, Inc., 717 F.2d 1120, 1125-26 (7th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984). In that case, a flannel shirt had ignited when it came in contact with a cigarette lighter flame, causing severe personal injuries to a minor. The Hong Kong manufacturer was held to be subject to suit in Wisconsin, because it had placed the shirt in the stream of commerce. The court stated:
 
 
 22
 The World-Wide Volkswagen Court's recognition of a distinction among the various entities that might compose a distribution system of a product is pivotal to the decision in this case.... The scope of the foreseeable market served by those defendants and of the benefits those defendants derived from the sale of the product was narrow. In contrast, the relevant scope is generally broader with respect to manufacturers and primary distributors of products who are at the start of a distribution system and who thereby serve, directly or indirectly, and derive economic benefit from a wider market. Such manufacturers and distributors purposely conduct their activities to make their product available for purchase in as many forums as possible. For this reason, a manufacturer or primary distributor may be subject to a particular forum's jurisdiction when a secondary distributor and retailer are not, because the manufacturer and primary distributor have intended to serve a broader market and they derive direct benefits from serving that market.
 
 
 23
 Id.
 
 
 24
 Similarly, the Fifth Circuit upheld jurisdiction over a foreign manufacturer of lighters that delivered them to a single distributor in the United States for dissemination throughout the country. In Oswalt v. Scripto, Inc., 616 F.2d 191 (5th Cir.1980), the court noted that the manufacturer delivered millions of lighters to the distributor with the understanding that the distributor would sell the lighters to a customer with national retail outlets. Id. at 199. "There is nothing in this record," the court averred,to indicate that [the manufacturer] attempted in any way to limit the states in which the lighters could be sold. To the contrary, the record shows that [the manufacturer] had every reason to believe its product would be sold to a nation-wide market, that is, in any or all states.
 
 
 25
 Id. at 199-200.
 
 
 26
 Rogers-Olympic seeks to distinguish Oswalt v. Scripto on the basis of numbers and argues: "In the instant case, Rogers-Olympic manufactured and sold to Remco two steel castings which were delivered either in the State of Washington or California, with ... no indication whatsoever as to their ultimate destination." If we count only products causing the injury (whether economic or physical) in a given case, then the problem in Oswalt v. Scripto centered on a single lighter that was introduced into the forum state. Instead, just as we considered the millions of lighters in Oswalt, we must consider the thousands of steel castings produced by Rogers-Olympic and incorporated as component parts of products sold throughout the nation.
 
 
 27
 Whereas in Oswalt v. Scripto the manufacturer introduced millions of lighters into the stream of commerce, in the instant case Rogers-Olympic introduced thousands of steel castings into that stream. The difference in numbers is not enough to convince us that Rogers-Olympic had no interest in reaching as broad a market as it possibly could. As in Oswalt v. Scripto, the manufacturer here evidenced no attempt to limit the states in which its castings would be sold and used, albeit as a component part of a larger product.
 
 
 28
 Moreover, the mere fact of being a component-part manufacturer affords Rogers-Olympic no solace. See Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432; 176 N.E.2d 761 (1961) (holding the manufacturer of a defective valve used in a water heater amenable to jurisdiction as a nonresident defendant), cited with approval in Oswalt v. Scripto, 615 F.2d at 201-02. The fact remains that even though Rogers-Olympic "did not originate the distribution system and [does] not control it, [the company] did place the [steel castings] in and move them along a stream of commerce destined for retail sale [in finished products] throughout the United States." Nelson v. Park Industries, Inc., 717 F.2d 1120, 1126 (7th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984).
 
 B. The Fairness of the Louisiana Forum
 
 29
 The second question to be determined under due process analysis is whether it would be "fair" to require Rogers-Olympic to defend this suit in Louisiana. When a controversy is related to or "arises out of" a defendant's contacts with the forum, the Supreme Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction. Helicopteros Nacionales de Colombia v. Hall, --- U.S. ----, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). The court must also examine "whether the forum state has any special interest in exercising jurisdiction, and whether the convenience of the parties favors litigating in another state." Austin v. North American Forest Products, 656 F.2d 1076 (5th Cir.1982). Upon review of the record, these considerations lead to the conclusion that it is both fair and reasonable to require Rogers-Olympic to defend this suit in Louisiana. Because the product was used in Louisiana, because the defects surfaced in Louisiana, because the economic injury has befallen a resident of Louisiana, and because the court has not dismissed the remaining litigation in Louisiana, that state has an interest in providing a forum for this suit. Given the magnitude of the Rogers-Olypmic operations, the court is compelled to hold that it is not unreasonably inconvenient for Rogers-Olympic to defend the suit in Louisiana. The "maintenance of [this] suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. at 316, 66 S.Ct. at 158 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).
 
 
 30
 We therefore hold that Rogers-Olympic is amenable to jurisdiction under the Louisiana Long-Arm Statute and the standards of due process.
 
 
 31
 REVERSED AND REMANDED.