IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-31106
Summary Calendar
_____


PATRICIA MAZA ANDERSON; ET AL

             Plaintiffs

     v.

T & D MACHINE HANDING INC; ET AL

             Defendants


T & D MACHINE HANDLING INC

             Defendant - Third Party Defendant - Appellant

     v.

SBH INC, doing business as Hughes Equip Co

             Third Party Defendant - Appellee

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(94-CV-3188-K)
_____

**May 01, 1996**

Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:*

_____

    *    Pursuant to Local Rule 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule

In an action brought against T & D Machine Handling, Inc. ("T & D") to recover damages allegedly sustained when a forklift owned by T & D emitted carbon monoxide fumes, T & D appeals the district court's dismissal of T & D's third-party claims against SBH, Inc. d/b/a Hughes Equipment Company ("SBH"), seller of the forklift, for lack of personal jurisdiction. We affirm.

## I.  BACKGROUND

On October 21, 1991, T & D, a Georgia corporation, purchased a used propane-powered forklift from SBH, an equipment company incorporated in Ohio. The sale was made at SBH's location in Ohio.

Approximately three years later, Mele Printing, Inc., located in Covington, Louisiana, hired T & D to off-load and set up a printing press manufactured by Heidelberg USA, Inc. ("Heidelberg"). Patricia Maza Anderson and certain others, most of whom were employees of Mele, sued T & D, Heidelberg, and their respective insurance companies in the United States District Court for the Eastern District of Louisiana to recover damages allegedly sustained after T & D's forklift emitted carbon monoxide fumes. T & D filed a third-party action against SBH, alleging that SBH was at fault for misrepresenting that the forklift could be safely used indoors, failing to warn of the dangers of indoor use, and other reasons.

---

47.5.4.

On May 23, 1995, SBH moved to dismiss T & D's third-party claims for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). T & D opposed the motion, arguing that the district court had personal jurisdiction based on either a stream of commerce argument or general jurisdiction. By minute entry, the district court granted SBH's motion, ruling that SBH had not had minimum contacts with Louisiana sufficient to support personal jurisdiction. T & D sought entry of a final judgment pursuant to Fed. R. Civ. P. 54(b). On October 12, 1995, the district court granted T & D's motion and entered final judgment dismissing the claims against SBH for lack of personal jurisdiction. One week later, T & D timely filed its notice of appeal.

## II. ANALYSIS

The determination by a district court that personal jurisdiction cannot be exercised over a nonresident defendant is reviewed de novo if the facts are not disputed. Ham v. La Cienega Music Co., 4 F.3d 413, 415 (5th Cir. 1993). In a diversity suit, a nonresident defendant is amenable to personal jurisdiction to the extent permitted by a state court in the state in which the federal court is located. Wilson v. Belin, 20 F.3d 644, 646 (5th Cir.), cert. denied, 115 S. Ct. 322 (1994); Bullion v. Gillespie, 895 F.2d 213, 215 (5th Cir. 1990). Thus, a federal court sitting in diversity may assert personal jurisdiction over a nonresident defendant if (1) the nonresident defendant is amenable to service of process under the long-arm

3

statute of the forum state and (2) the exercise of jurisdiction under state law comports with the Due Process Clause of the Fourteenth Amendment.  Wilson, 20 F.3d at 646-47.  Louisiana's long-arm statute extends to the limits of federal due process, so the statutory and constitutional inquiries merge.  Dalton v. R & W Marine, Inc., 897 F.2d 1359, 1361 (5th Cir. 1990).

The exercise of personal jurisdiction over a nonresident defendant comports with due process if (1) the defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws by establishing "minimum contacts" with the state, and (2) such an exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice."  Wilson, 20 F.3d at 647 (citations omitted).  Minimum contacts with a forum state may give rise to "specific" or "general" personal jurisdiction.  Bullion, 895 F.2d at 216. Specific jurisdiction is appropriate when the defendant's "contacts with the forum state arise from, or are directly related to, the cause of action."  Wilson, 20 F.3d at 644; see Burger King Corp. v Rudzewicz, 471 U.S. 462, 474 (1985); Villar v. Crowley Maritime Corp., 990 F.2d 1489, 1496 (5th Cir. 1993), cert. denied, 114 S. Ct. 690 (1994).  General jurisdiction is invoked when the nonresident defendant maintains "continuous and systematic" contacts with the forum state, even if those contacts are not directly related to the cause of action.  Wilson, 20 F.3d at 647; Bullion, 895 F.2d at 213.  In regard to general

4

jurisdiction, "[m]ore contact is required with the forum state because the state has no direct interest in the cause of action." Bearry v. Beech Aircraft Corp., 818 F.2d 370, 374 (5th Cir. 1987).

T & D raises two issues on appeal:  (1) whether the district court erred by not finding personal jurisdiction over SBH based on SBH's placing the forklift into the stream of commerce; and (2) whether a finding of personal jurisdiction over SBH was proper based on SBH's continuous and systematic contacts with Louisiana.  We examine these issues in turn.

### A.    Stream of Commerce

"The Supreme Court has stated that a defendant's placing of its product into the stream of commerce with the knowledge that the product will be used in the forum state is enough to constitute minimum contacts."  Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 419 (5th Cir. 1993) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980)).  Foreseeability is a critical factor in such a stream-of-commerce analysis, but not foreseeability per se[2]--**"not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  World-Wide Volkswagen,**

---

[2]    **The Supreme Court has noted that if foreseeability per se were the criterion, "[e]very seller of chattels would in effect appoint the chattel his agent for service of process.  His amenability to suit would travel with the chattel." World-Wide Volkswagen, 444 U.S. at 296.**

5

444 U.S. at 297 (citations omitted).  Moreover, it is essential that the defendant "purposefully avail[ed himself] of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253 (1958).  "This purposeful-availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party."  Burger King, 471 U.S. at 475 (citations and internal quotation marks omitted).

T & D contends that SBH is subject to personal jurisdiction in Louisiana because SBH placed its products into the stream of commerce.  In advancing this argument, T & D relies on World-Wide Volkswagen, Ruston, and Bean Dredging Corp. v. Dredge Technology Corp., 744 F.2d 1081 (5th Cir. 1984).  In World-Wide Volkswagen, New York residents who purchased an automobile from a retailer in New York were injured in Oklahoma a year later while driving to a new home.  Oklahoma sought to impose jurisdiction over the automobile manufacturer, the importer, the New York wholesale distributor, and the New York retail dealer.  In dictum, the Supreme Court stated:

> if the sale of a product of a manufacturer or
> distributor such as Audi or Volkswagen is not simply an
> isolated occurrence, but arises from the efforts of the
> manufacturer or distributor to serve, directly, or
> indirectly, the market for its products in other
> States, it is not unreasonable to subject it to suit in
> one of those States if its allegedly defective
> merchandise has there been the source of injury to its
> owner or others.

6

World-Wide Volkswagen, 444 U.S. at 297.  The Supreme Court held, however, that the two defendants at the end of the automobile distribution system--the wholesale distributor and the retail dealer--were not amenable to Oklahoma jurisdiction.  Id. at 299.  The Court distinguished the situation of these two defendants from that of the manufacturer and the importer.  Id. at 297-98.

     In Ruston, the plaintiff's claim arose out of a Minnesota manufacturer's contacts with the forum state--Texas.  On 211 different occasions over a fifteen year period, the manufacturer shipped equipment directly to locations in Texas, and on several occasions employees of the manufacturer met with customers in Texas.  We held that the minimum contacts prong was satisfied because the manufacturer placed its products into the stream of commerce.  Ruston, 9 F.3d 420-21.  In Bean, a Washington manufacturer introduced thousands of steel castings into the stream of commerce.  Noting that the manufacturer "evidenced no attempt to limit the states in which its castings would be sold and used," we held that the manufacturer had sufficient minimum contacts with the forum state--Louisiana.  Bean, 744 F.2d at 1085-86.

     We do not believe that the circumstances of this case support a finding of purposeful availment as delineated in World-Wide Volkswagen and its progeny.  Contrary to the position taken by T & D, we find that relative to the stream of commerce the posture of SBH--a dealer in used forklifts--had more in common with that of the wholesale distributor in World-Wide Volkswagen

7

than with that of the manufacturer or the importer.  The scope of the foreseeable market served by the wholesale distributor and the retail dealer in World-Wide Volkswagen was narrow, as were the benefits they derived from that market.  "In contrast, the relevant scope is generally broader with respect to manufacturers and primary distributors of products who are at the start of a distribution system. . . .  For this reason, [they] may be subject to a particular forum's jurisdiction when a secondary distributor and retailer are not . . . ."  Bean, 744 F.2d at 1084 (quoting Nelson v. Park Indus., Inc., 717 F.2d 1120, 1125-26 (7th Cir. 1983), cert. denied, 465 U.S. 1024 (1984)).  T & D argues that SBH advertises in trade publications that are circulated nationwide and that its customer list "contains addresses of customers located all over the country."  This notwithstanding, in our opinion SBH may be likened more readily to a secondary distributor or a dealer than to a manufacturer at the headwaters of the stream of commerce.

Moreover, the instant case is distinguishable from Ruston and Bean.  T & D contends that SBH advertised in national publications, sold one forklift to a Louisiana resident,[3] and made phone calls to Louisiana.  The defendant in Ruston was a manufacturer with contacts to the forum state that were much more

---

[3]    The forklift sold directly into Louisiana was not the propane-powered forklift purchased by T & D.  In its August 15, 1995 Minute Entry, the district court stated:  "SBH was involved in one isolated sale to a Louisiana resident in 1990 for $1,100 amounting to .07% of SBH's total revenue for that year."  SBH's sales records indicate that this is the only instance of a direct sale to a Louisiana resident since the company's inception.

substantial than SBH's contacts with Louisiana. The defendant in Bean was a manufacturer that placed thousands of steel castings into the stream of commerce. We do not find a manufacturer's unchecked dispersion of thousands of component parts comparable to the activities of a second-hand forklift dealer. A Louisiana state court recently decided a case involving a California company that sold, rented, and serviced airplanes; the company advertised in national publications that reached Louisiana residents and had serviced a California-owned airplane that was sold to a Louisiana resident and subsequently rented to the plaintiff's deceased husband. Mayo v. Tillman Aero, Inc., 640 So. 2d 314 (La. App. 3 Cir. 1994). The state court found that "[i]f anything, [the defendant's] serving from time to time of a Louisiana resident seeking pilot training or a Louisiana plane owner requiring maintenance on his plane would only be a fortuitous and random contact with Louisiana." Id. at 319. We find that the SBH's contacts with Louisiana were random, fortuitous, and attenuated. We conclude, therefore, that SBH did not purposefully avail itself of the privilege of conducting activities within Louisiana such that SBH is amenable to specific personal jurisdiction in Louisiana.

B.   Continuous and Systematic Contacts

T & D also contends that SBH is subject to general personal jurisdiction in Louisiana. T & D argues that SBH has had sufficiently continuous and systematic contacts with Louisiana to constitute a general presence in the state. General jurisdiction

9

is proper as long as the defendant's contacts with the forum are substantial.  Wilson, 20 F.3d at 649 (citation omitted).  In Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984), the Supreme Court elaborated on the requirement that contacts be "substantial," by reference to the Supreme Court's seminal case on point, Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952):  "In Perkins, . . . [the corporation's] president, who was also general manager and principal stockholder of the company, returned to his home in Ohio where he carried on `a continuous and systematic supervision of the . . . company.'" 465 U.S. at 779 n.11.  The Keeton Court explains that Ohio jurisdiction was proper because the company's files were kept there, director's meetings were held there, and bank accounts were maintained there.  Id.

In the case sub judice, the district court found that SBH did not have sufficiently continuous and systematic contact with Louisiana to constitute the requisite minimum contacts necessary for general personal jurisdiction.  According to the affidavit of Steven Hughes, president of SBH, as summarized by the district court:  "SBH has never been authorized to do business in Louisiana. . . . never maintained an agent, employee, office, bank account, mailing address or telephone listing in Louisiana. . . . never owned immovable property in Louisiana. . . . never employed persons in Louisiana. . . . never entered into a contract in Louisiana."  T & D, however, charged that SBH had had contact with Louisiana in various ways:  SBH advertised in

10

national publications that were distributed in Louisiana; SBH sold a forklift to a Louisiana resident in 1990; SBH made a number of telephone calls and sent faxes to Louisiana;[4] **and "SBH seems to have transported equipment through Louisiana . . . ."**

**T & D relies on** <u>Pedelahore v. Astropark</u>**, 745 F.2d 346 (5th Cir. 1984), to bolster its contention that SBH's contacts with Louisiana were systematic and continuous.  In** <u>Pedelahore</u>**, we held that subjecting a nonresident amusement park to** <u>in personam</u> **jurisdiction in Louisiana was constitutionally permissible, despite the absence of a causal connection between the park and the incident giving rise to the action, because the "contacts of Astropark within the State of Louisiana were patently continuous and systematic."  <u>Id.</u> at 348.  The contacts enumerated in** <u>Pedelahore</u> **were as follows:**

> **(1) An advertising program aimed at Louisianians, including the distribution of brochures and thousands of radio and television spots, together with advertisements in local, national, and regional publications . . . .**
> **(2) A ticket assignment agreement with all Louisiana travel agencies . . . .**
> **(3) The conducting of a three-day seminar in New Orleans in December 1982 by the Astropark Marketing**

---

[4]     In its August 15, 1995 Minute Entry, the district court explained:

> T&D claims that because SBH contacted Louisiana by telephone and/or facsimile over a four and a half year period for a total of 313.20 minutes it has engaged in "continuous and systematic" contact with Louisiana. Even assuming that each of these contacts was "business solicitation," at most, SBH's contacts with Louisiana constituted only .002 percent of its 114,015.90 total minutes.  Such few contacts do not support a finding of general jurisdiction.

Department, aimed, <u>inter alia</u>, at developing business from Louisiana for the Houston operation.
(4) The appointment of a sales representative with Louisiana as her area of responsibility.

<u>Id.</u> at 349. By contrast, SBH's contacts with Louisiana are meager.

We find that SBH's isolated contacts with Louisiana do not evidence an "invoking [of] the benefits and protections of its laws." <u>See</u> <u>Hanson</u>, 357 U.S. at 253. At the heart of the general jurisdiction analysis is the concept of "exchange." <u>Bearry</u>, 818 F.2d at 375. By invoking constructive consent, the concept of exchange accommodates both the sovereign interest of the state and the individual's interest in a fairly accessible forum. <u>Id.</u> "That is, by invoking the benefits and protections of the forum's laws, the nonresident defendant is seen as "consenting" to being sued there." <u>Id.</u> But SBH's contacts with Louisiana--ads in industry-wide publications, one used forklift sold to a resident, and a smattering of phone calls--do not add up to the general business presence found to exist in <u>Perkins</u> and <u>Pedelahore</u>.

Our examination of SBH's unrelated contacts in Louisiana leads us to the conclusion that SBH's contacts were not sufficiently continuous and systematic to support the exercise of general personal jurisdiction in Louisiana. We cannot say that because of these various brief contacts with Louisiana SBH reasonably should have expected to be sued in Louisiana. These contacts were not substantial enough to give rise to such an expectation. Thus, we conclude that the assertion of general personal jurisdiction over SBH would deprive SBH of its due

12

process liberty interest not to be subjected to suit in a distant forum with which it has little connection.

Because we hold that SBH did not have sufficient related or unrelated minimum contacts with Louisiana, we need not address whether the exercise of personal jurisdiction in this case would be consonant with "traditional notions of fair play and substantial justice."

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.