Amanda ANDERSEN, b/n/f Kenneth Andersen, Kenneth Andersen and Linda Andersen Plaintiffs,

v.

SPORTMART, INC., Wilson Sporting Goods Co., General Sportcraft Co. Ltd., Foremost Sports Co., a Division of General Sportcraft Co.,and A & O Rubber Plastics Defendants.

Sportmart, Inc., Wilson Sporting Goods Co., Foremost Sports Co., and General Sportcraft Co., Ltd., Cross–Plaintiffs,

v.

A & O Rubber & Plastic Ind. Co., Ltd., d/b/a Hung Yeh Rubber & Plastic Co., Ltd. Cross–Defendant.

Sportmart, Inc., Wilson Sporting Goods Co., Foremost Sports Co., and General Sportcraft Co., Ltd., Third Party Plaintiffs,

v.

Taiwan Daido, Ltd., Tung Chin Industrial Store, Hung Wang, Hung Wen–Ming, and Hung Ming–Pen Third Party Defendants.

No. 2:94 CV 0136AS.

United States District Court, N.D. Indiana, Fort Wayne Division.

July 14, 1999.

David C. Bohrer, Kathryn C. Thomas, Oppenheimer Wolff and Donnelly, Chicago, IL, for Sportmart Inc., Wilson Sporting Goods Co., Inc., General Sportscraft Co., Ltd., Inc., Foremost Sport Co., Sportman Inc.

Douglas K. Dieterly, James M. Lewis, Barnes and Thornburg, South Bend, IN, Mark A. Garvin, Barnes and Thornburg, Fort Wayne, IN, Charles Ya–Wen Chiu, for Taiwan Daido, Ltd.

### MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

In July, 1992, plaintiff, Amanda Andersen, suffered a severe eye injury while playing in her backyard with an allegedly defective batting tee. The injury spawned the present lawsuit wherein Andersen and her parents sued the distributors, sellers [1], and manufacturer [2] of the batting tee under negligence, products liability, and breach of warranty theories. Seeking contribution and indemnification, Defendants General Sportcraft, Sportmart, Wilson, and Foremost (collectively referenced

---

1. The distributors and sellers included: General Sportcraft Co., Ltd. ("General Sportcraft"), Wilson Sporting Goods ("Wilson"), Foremost Sport Co.("Foremost") and Sportmart, Inc. ("Sportmart").

2. A & O Rubber Plastics ("A & O Rubber") manufactured the batting tees which caused plaintiff's injury.

herein as "Sportcraft") filed their cross-complaint against manufacturer, A & O Rubber[3] and a third-party complaint against Taiwan Daido, Ltd. ("Daido"), the Taiwanese buying agent for Sportcraft. In April, 1998, after reaching settlement with Sportcraft, plaintiffs dismissed their lawsuit without prejudice to Sportcraft's pending cross-claim and third party claims for contribution. These are the sole claims pending in this action.

Presently before the court is Daido's Motion to Dismiss for Lack of Personal Jurisdiction, filed on April 1, 1998. This filing triggered Sportcraft's Motion for Leave to Conduct Discovery on the Limited Issue of Personal Jurisdiction. In a published order dated, May 5, 1998, Magistrate Judge Roger Cosbey granted Sportcraft's motion.[4] As a result of that order, Sportcraft deposed Daido's President, Toru Tsukagoshi and requested additional discovery in the form of interrogatories and requests for production of documents. More than a year later, on June 11, 1999, Sportcraft tendered its "Opposition to Taiwan Daido's Motion to Dismiss for Lack of Personal Jurisdiction or, in the alternative, Motion to Transfer Venue Pursuant to 28 U.S.C. § 1406(a)." Daido replied on June 25, 1999.

For the following reasons, the motion to dismiss is DENIED and this case shall be TRANSFERRED to the United States District Court for the District of New Jersey.

## APPLICABLE STANDARD AND FACTUAL BACKGROUND

 On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), the plaintiff has the burden to make a prima facie showing that personal jurisdiction exists. See *Neuman v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir.1994).[5] A plaintiff satisfies this prima facie requirement by presenting evidence of specific facts that, when taken as true, are sufficient to support a finding of personal jurisdiction. *Sheridan v. Ascutney Mountain Resort Services, Inc.*, 925 F.Supp. 872 (D.C.Mass. 1996) ("a prima facie showing of personal jurisdiction must be based on evidence of specific facts set forth in the record; the plaintiff must go beyond the pleadings and make affirmative proof."); see also *Cable/Home Communication Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir.1990) (plaintiff must make a prima facie showing that jurisdiction exists by presenting enough evidence to withstand a motion for a directed verdict). When deciding whether plaintiff has made the nec-

3. Despite Sportcraft's commencement of the time-consuming process of international service of process, the court's records indicate that A & O Rubber was not served with the cross-complaint. Subsequent to filing its cross-complaint, Sportcraft learned that since November, 1997, A & O Rubber transferred its business operations to San Hsia Town, Taiwan, and is conducting business as Tung Chin Industrial Store. After obtaining this information, Sportcraft filed an Amended Third Party Complaint which named as additional third-party defendants Tung Chin Industrial Store, a successor corporation to A & O Rubber, Inc., and Hung Wang, Hung Wen-Ming, and Hung Ming-Pen, the principals of the Tung Chin Industrial Store. The docket reflects that letters rogatory were returned unexecuted on March 29, 1999 and that Sportcraft has been granted two extensions of time to complete international service. As of today's date, these third-party defendants have not been served in this action.

4. This order can be located at 179 F.R.D. 236 (N.D.Ind.1998).

5. When determining the existence of personal jurisdiction, the court has discretion to rely on written submissions or to hold a full evidentiary hearing. In the absence of a full evidentiary hearing, the plaintiff must make only a prima facie case that personal jurisdiction exists. See *Wilson v. Belin*, 20 F.3d 644 (5th Cir.1994); *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587 n. 3 (9th Cir.1993); *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 626 (11th Cir.1994). However, where the court holds an evidentiary hearing or the issue is litigated at trial, the party asserting jurisdiction must demonstrate its existence by a preponderance of the evidence. See *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.), *cert denied*, 519 U.S. 1006, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996)

essary showing, a court is not limited to the pleadings but may consider affidavits, interrogatories, depositions, oral testimony or any combination of the recognized methods of discovery. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987); *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751 (5th Cir.1996). At this stage, all factual disputes are resolved in the plaintiff's favor. *See Turnock*, 816 F.2d at 333. Applying these standards, the straightforward and relatively uncomplicated facts are:

Daido is an independently run Taiwanese corporation with its principal place of business in Taipei, Taiwan. (Tsukagoshi Aff. ¶¶ 3, 4). Daido employs eight employees, all of which reside in Taiwan or nearby Asian countries. (Tsukagoshi Aff. ¶ 20). Daido's business involves acting as a regional purchasing agent for companies outside of Asia which seek to purchase goods manufactured in Asia. (Tsukagoshi Aff. ¶ 5). As a purchasing agent, Daido places orders for goods on behalf of its clients with Asian companies, monitors the production schedule, inspects the finished order for shipping, and arranges the shipping.[6] (Tsukagoshi Dep. p. 69) All of Daido's business is conducted within the Taiwanese border.

Daido does not maintain or lease any offices, facilities, places of business or property in Indiana (Tsukagoshi Aff. ¶¶ 12,13); has no employees or agents in Indiana (Tsukagoshi Aff. ¶¶ 10, 11); has never directly sold any product in Indiana or advertised, designed or selected any product specifically for use in Indiana (Tsukagoshi Aff. ¶¶ 14,15); and has never maintained any business relationships with any Indiana corporation (Tsukagoshi Aff. ¶ 16).

Operating as a purchasing agent for General Sportcraft in 1991 and 1992,[7] Daido arranged sales of certain products, including batting tees, manufactured by A & O Rubber to General Sportcraft. These batting tees are the same type and model which allegedly caused Amanda Andersen's injury. According to Tsukagoshi, upon A & O Rubber's completion of the order, he shipped the batting tees to General Sportcraft at a New Jersey address. (Tsukagoshi Dep. p. 70). Although Tsukagoshi shipped the batting tees to New Jersey, Tsukagoshi testified that he "didn't believe that everything was sold in New Jersey." (Tsukagoshi Dep. p. 76–77).

In addition to this belief, there are some facts which suggest that Daido knew that Sportcraft distributed the products it received from Daido throughout the United States. In November, 1992, Tsukagoshi authored a letter which indicates that he had some knowledge that Sportcraft's retailers included K–Mart, Wal–Mart, and Venture, Inc. In 1993, Tsukagoshi received a fax from Sportcraft informing Tsukagoshi that a Sportcraft employee saw a particular game Daido had distributed in a Troy, Michigan K–Mart. Also in 1993, Tsukagoshi met with K–Mart representatives in K–Mart's Taipei office to discuss the design of certain products which would

**6.** In his deposition, Tsukagoshi described the types of duties he performs as part of "arranging shipping:"

I checked the completion date of production, and to prepare the shipment, I calculated space for loading and then arranged a customs clearance and prepared the shipping documents and sent them to Sportcraft.

Tsukagoshi Dep. p. 69.

**7.** Tsukagoshi testified that Daido's business relationship with Sportcraft was ongoing since 1982 (Tsukagoshi Dep. p. 30), although it appears that the services offered by Daido to Sportcraft in 1982 did not include Daido acting as a purchasing agent for Sportcraft. (Tsukagoshi Dep. p. 44: "... we become Sportcraft buying agent starting from 1985"). In October, 1992, the purchasing agent component of the relationship was codified for the first time in a written agreement which described the services Daido would provide as a purchasing agent for Sportcraft. Daido did act as a purchasing agent for Sportcraft from 1985 until the October, 1992 agreement under the same terms contained in the agreement. (Tsukagoshi Dep. p. 40). According to Tsukagoshi, Sportcraft requested the written agreement. (Tsukagoshi Dep. p. 38).

be shipped to Sportcraft for sale in K–Mart. Finally, while visiting the United States, Tsukagoshi stated that he saw some of the products he had shipped to Sportcraft in a K–Mart store. Tsukagoshi could not recall the date, time, or location of this K–Mart store.

With these facts set forth, the court turns to the parties' arguments.

### A. *Personal Jurisdiction*

A federal court must obtain personal jurisdiction over a third-party defendant before it proceeds to adjudicate a third-party claim. *Nortown Steel Supply Co. v. Northern Indiana Steel Supply Co.,* 315 F.2d 789 (7th Cir.1963). Federal courts sitting in diversity cases may exercise personal jurisdiction over a nonresident defendant only if a court in the state in which the district court sits would have such jurisdiction. *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 580 (7th Cir.1994); *Wilson v. Humphreys (Cayman) Limited,* 916 F.2d 1239, 1243 (7th Cir.1990), cert. denied, 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991). Thus, this court has jurisdiction only if Indiana confers jurisdiction through its long-arm statute.

Traditionally, the Seventh Circuit employs a two part inquiry to determine whether personal jurisdiction exists. *Wilson,* 916 F.2d at 1243. First, using the state's long-arm statute, the court determines whether the state statute permits jurisdiction. *Id.* If not, the inquiry ends. *Id.* If the state statute permits jurisdiction, the court engages in a second inquiry to determine whether the assertion of jurisdiction complies with constitutional due process standards. *Id.*

In Indiana, the long-arm statute, embodied in Trial Rule 4.4, extends the personal jurisdiction of federal courts to the limit allowed under the due process clause of the fourteenth amendment. *Wallace v. Herron,* 778 F.2d 391, 393 (7th Cir.1985). Accordingly, because Indiana's long-arm statute extends itself within the full reach of the due process clause, compliance with the dual inquiries expressed in *Wilson* is achieved by a single inquiry of whether the exercise of personal jurisdiction comports with due process. *Wilson,* 916 F.2d at 1243; *Dehmlow v. Austin Fireworks,* 963 F.2d 941, 944 (7th Cir.1992) ("The first inquiry is wholly unnecessary in the case of many modern state statutes which include catch-all provisions that grant to state courts jurisdiction over all matters in which the state may constitutionally assert jurisdiction.")

Due process requires a nonresident defendant to have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Indeed, in this case, Daido's conduct and connection with Indiana must be such that it "should reasonably anticipate being haled into court" in Indiana. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). This inquiry is satisfied where Daido has purposefully availed itself of the privilege of conducting activities in Indiana and invoked the protections of Indiana law. *Id.* at 474, 105 S.Ct. at 2183.

Satisfaction of the purposeful availment and minimum contacts due process requirements may be achieved through analysis of either the defendant's general contacts with the forum or the defendant's specific contacts related to the cause of action before the court. *Hexacomb Corp. v. Damage Prevention Products Corp.,* 905 F.Supp. 557 (N.D.Ind. 1995). General contacts with the forum are those contacts by a defendant in the forum state which are "systematic and continuous" although unrelated to the cause of action litigated. In contrast, specific contacts jurisdiction exists where the cause of action arises out of or relates to the defendant's activities in the forum

state. *See Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414–415 n. 8, 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Giotis v. Apollo of the Ozarks, Inc.,* 800 F.2d 660, 666 n. 3 (7th Cir.1986). Here, Sportcraft does not argue that it can establish general contacts between Indiana and Daido, and indeed, the sparse record reflects little evidence which would support such an assertion. Thus, if personal jurisdiction exists at all, this court must find it within the confines of the specific contacts jurisdiction doctrine.

Specific jurisdiction "turns on a particularized assessment of the 'relationship among the defendant, the forum, and the litigation.'" *Saylor v. Dyniewski,* 836 F.2d 341, 344 (7th Cir.1988) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). As a result, the defendant's contacts with the forum state are weighed with respect to the transaction underlying the litigation. *Wilson,* 916 F.2d at 1244. In this case, the evidence reflects that Daido has no direct contacts with Indiana and that its sole contact with the United States appears to be the underlying transaction with Sportcraft wherein Daido shipped goods to New Jersey. But, this court's inquiry does not end here. Daido admits that it shipped batting tees into New Jersey. Placing products into the stream of commerce in the United States may create sufficient contacts for this court to exercise personal jurisdiction. *See World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490. As Magistrate Judge Cosbey explained in his Order:

> The facts of this case make it particularly amenable to the 'stream of commerce' analysis of specific jurisdiction. The Supreme Court first explained the stream of commerce theory in World–Wide Volkswagen: '[t]he forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce *with the expectation that they will be purchased by consumers in the forum state.*' *World–Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567 (emphasis added). The Seventh Circuit subsequently took a broad view of the stream of commerce theory, holding that a defendant distributor or manufacturer may reasonably anticipate being haled into court when it places goods into the stream of commerce with some knowledge or awareness that the system employed for distribution will result in the goods being destined for retail sale in the forum state. *See Nelson v. Park Industries, Inc.,* 717 F.2d 1120, 1126 (7th Cir.1983), *cert denied sub nom. United Garment Mfg. Co., Ltd. v. Nelson,* 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984). The *Nelson* court reasoned that the 'relevant scope of the foreseeable market is generally broader with respect to ... primary distributors of products [t]hat are at the start of the distribution system and who thereby serve, directly or indirectly, and derive economic benefit from a wider market' because 'such ... distributors purposely conduct their activities to make their products available for purchase in as many forums as possible.' *The Curtis Management Group, Inc. v. Academy of Motion Picture Arts and Sciences,* 717 F.Supp. 1362, 1370 (S.D.Ind.1989) (quoting *Nelson,* 717 F.2d at 1125).

179 F.R.D. at 239. The Magistrate further concluded that "[u]nder the broad Seventh Circuit test, the critical fact is whether the defendant knows that the distribution system employed to disperse its products for retail sale is designed to bring the defendant's products into the forum state." *Id.* at 239–240.

Daido, as it did in the briefing and oral arguments before Magistrate Judge Cosbey, attacks this broad stream of commerce theory and urges this court to adopt a plurality opinion written by Justice O'Connor in *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d

92 (1987) which rejected the stream of commerce theory and opted for a "stream of commerce-plus" theory. Under O'Connor's philosophy, a nonresident defendant must show that its products entered the stream of commerce plus some additional activity in the forum which indicates that the defendant intended to purposefully avail itself of the forum. In the alternative to adopting O'Connor's version of the stream of commerce test, Daido invites this court to address both the broad Seventh Circuit approach and the narrow "stream of commerce" theory espoused by Justice O'Connor. The court declines both of these invitations.[8]

After reviewing the applicable case law, including the two plurality opinions in *Asahi*, Magistrate Judge Cosbey concluded that "the Seventh Circuit's broad stream of commerce theory of minimum contacts remains determinative in this circuit."

*Andersen*, 179 F.R.D. at 240. Indeed, such a conclusion is supported by cases within this circuit which have expressly refused to adopt one of the plurality opinions in *Asahi*. *See e.g., Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946 (7th Cir. 1992) (setting forth the more permissive test in *World Wide Volkswagen* and stating "this circuit has repeatedly endorsed the 'stream of commerce theory' and has resolved cases on the basis of it."); *Curtis Management*, 717 F.Supp. at 1366 (holding that since the Supreme Court cannot agree on the standard and Seventh Circuit has not addressed the issue since *Asahi*, the district court must continue to apply stream of commerce theory set forth in *World–Wide Volkswagen*); *Sentry Insurance Co. v. Bull HN Information Systems, Inc.*, 1999 WL 51801 (N.D.Ill. Jan.29, 1999) ("Although four Justices believe a more stringent stream-of-standard is appropriate, a majority has yet to reject the

---

**8.** In *Asahi*, a California plaintiff injured in a motorcycle accident in California filed a products liability suit in California against Cheng Shin, a Taiwan corporation that manufactured the motorcycle's tire tube, contending the tube was defective. Cheng Shin impleaded Asahi Metal, a Japanese corporation, seeking indemnification because Asahi manufactured the valve assemblies for Cheng Shin's tire tube. The plaintiff and Cheng Shin settled, leaving only the indemnity action between Cheng Shin and Asahi, which contested jurisdiction.

Like the instant case, Asahi had no offices, agents or property in California and had not directly solicited business there. This lack of contact with California notwithstanding, the California Supreme Court concluded personal jurisdiction existed since Asahi sold its tube assemblies to Cheng Shin knowing that some of the valve assemblies would be incorporated into tire tube sold in California.

The Supreme Court reversed the California Supreme Court's holding, all of the Justices agreeing that the exercise of personal jurisdiction over Asahi was disconsonant with notions of fair play and substantial justice. However, the Justices were divided on the level of minimum contacts necessary for a finding of jurisdiction under the stream of commerce theory which prompted three separate analysis' of the issue.

Justice O'Connor, writing on behalf of four justices, concluded that "a defendant's aware-

ness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id*. Rather, Justice O'Connor concluded that placing a product in the stream of commerce must be accompanied by "additional conduct of the defendant [that] may indicate an intent or purpose to serve the market in the forum State." *Id*. at 112, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92. However, the *Asahi* case prompted a second plurality opinion led by Justice Brennan which disagreed with Justice O'Connor's analysis that additional conduct is necessary to demonstrate minimum contacts: "[a]s long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit three cannot come as a surprise." *Id*. at 117, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92. In the end, Justice Brennan concluded:

A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State or engages in additional conduct directed toward the State.

*Id*. (Brennan, J., concurring).

*World–Wide* formulation. For this reason, the Seventh Circuit instructs the use of World–Wide's more permissive standard."); *Eazypower Corporation v. ICC Innovative Concepts Corporation,* 1999 WL 66576 (N.D.Ill. Feb.8, 1999) ("[Justice O'Connor's] approach, however, is not yet supported by a majority of the Court. Thus, until a majority of the Supreme Court rejects the broader stream of commerce theory in favor of the more narrow view mentioned in *Asahi,* the theory remains applicable."). Accordingly, in line with these cases, this court likewise concludes that the Seventh Circuit's broad stream of commerce theory applies to Daido in this case.

With that said, the remaining inquiry is whether Daido has sufficient contacts with Indiana under the broad stream of commerce analysis such that it should have reasonably anticipated being haled into court here. In *Nelson,* a case with markedly similar facts to the instant case, the Seventh Circuit articulated the stream of commerce analysis in this fashion:

> However, even though Bunnan [purchasing agent] and United [manufacturer] did not originate the distribution system and do not control it, they did place the flannel shirts in and move them along a stream of commerce destined for retail sale throughout the United States in Woolworth's retail stores. In determining whether it is reasonable to hale Bunnan and United into court in Wisconsin, a critical fact is whether those defendants were aware of that distribution system. If they were aware, they were indirectly serving and deriving economic benefits from the national retail market established by Woolworth, and they should reasonably anticipate being subject to suit in any forum within that market where their product caused injury.

*Nelson,* 717 F.2d at 1126.

Applying this standard, this court is satisfied that it has specific personal jurisdiction over Daido sufficient to comport with due process requirements. Admittedly, this is a close case. Unlike most cases in which the stream of commerce theory of jurisdiction is asserted, Sportcraft has not submitted any affidavits from its employees indicating that they notified Daido that the products it received were being sold nationwide, through nationwide retailers. *See Nelson,* 717 F.2d at 1126. Further, the evidence Sportcraft does submit faintly demonstrates that Daido had some knowledge that the products it distributed were sold nationwide. Nevertheless, Sportcraft's burden at this stage is only to demonstrate a prima facie case of jurisdiction and from Tsukagoshi's testimony the court finds evidence that Daido had an awareness of the distribution chain which carried the products it purchased on behalf of Sportcraft throughout the United States, and into the state of Indiana.

Turning to the evidence supporting this conclusion, Sportcraft points to six crucial pieces of evidence which it contends supports a finding that Daido was aware of the distribution system. First, in his deposition, Tsukagoshi testified that although he shipped the batting tees to New Jersey, he did not believe they were all sold in New Jersey. (Tsukagoshi Dep. pp. 76–77). Second, Tsukagoshi admitted receiving a letter dated November 21, 1992, which indicates that Sportcraft's retailers included nationwide chains such as Kmart and Wal-Mart. (Sportcraft Exhibit "T"; Tsukagoshi Dep. pp. 83–88). Third, in February, 1993, Tsukagoshi received a fax from Sportcraft employee Mike Nally ("Nally") informing Tsukagoshi that he was at a K–Mart located in Troy, Michigan and saw a particular game Daido had distributed. Fourth, there is evidence that Tsukagoshi met with K–Mart representatives in Taipei to discuss colors for 1993 K–Mart dartboards. Fifth, Tsukagoshi testified that he visited a K–Mart store in the United States and saw Sportcraft products that he had distributed in that store. Finally, a memorandum dated September 4, 1995 indicates that Daido was arranging for

Indiana University emblems to be placed on table games. Having provided the court with this evidence, Sportcraft presses that a reasonable inference drawn from this information is that Daido "must have had" knowledge of the distribution system which brought the batting tees into Indiana.[9] This court agrees.

Sportcraft's evidence, taken as a whole and in a light favorable to Sportcraft, raises an inference that Daido knew or should have known that the distribution system for products it shipped to Sportcraft included nationwide chains such as K–Mart, Wal–Mart and Venture. *See Giotis*, 800 F.2d at 667 (holding that a seller, because of intervening levels of distribution, may not have mentally formed a purpose to sell its product to the particular individual buyer who is suing it, but when the seller purposefully chooses to sell generally to a regional distributor it reaps the economic benefit of doing so); *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610 (8th Cir.1994) (finding that where the defendant "poured its products into regional distributors" it cannot credibly claim that it had no idea its products were being distributed into neighboring states). Tsukagoshi's meeting at K–Mart's Taipei office indicates that Daido had some knowledge that K–Mart was a national, if not international, retail chain. Further, Tsukagoshi's admission that he "did not believe everything was sold in New Jersey" similarly supports such a conclusion. Thus, the evidence is sufficient for Sportcraft to present a prima facie case of personal jurisdiction.

This conclusion is not disturbed by Tsukagoshi's persistent denials that he knew that the products were being shipped through nationwide retailers. As an exporter, Daido benefitted from Sportcraft's distribution of the products throughout the United States. Daido's role is arguably less than the manufacturer of the goods, but Daido, nonetheless was a necessary link in the chain of distribution which brought the goods throughout the United States. "We look to the economic and commercial realities of this case, and in our view, it is not within the contemplation of the concepts of fairness and due process to allow a wrongdoing manufacturer to insulate himself from the long arm of the courts by using an intermediary or by professing ignorance of the ultimate destination of his products." *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir.1975); *see also Barone*, 25 F.3d at 615 (holding that when a corporation pours products into a regional distributor it ex-

9. In rebutting Sportcraft's evidence, Daido proceeds as though much of this evidence is irrelevant since it occurred after Daido shipped the batting tees and after the injury to Amanda Andersen occurred. As Daido argues, the facts set forth by Sportcraft "have nothing to do with batting tees, and nothing to do with Taiwan Daido's knowledge at the time the batting tees were shipped. They relate to events that occurred well after the batting tees in question were shipped and even after Amanda Andersen was injured." Thus, under Daido's theory, any contacts or knowledge Daido had concerning the distribution system after the allegedly defective batting tees were shipped or Amanda Andersen was injured stopped the clock for personal jurisdiction purposes.

This theory, however, has consistently been rejected. *See United Phosphorus, Ltd. v. Angus Chemical Company*, 43 F.Supp.2d 904 (N.D.Ill.1999); *Sportmart Inc. v. Frisch*, 537 F.Supp. 1254 (N.D.Ill.1982); *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir.1987). These courts hold that the clock stops running the date the complaint is filed. Thus, under these cases a defendant's contacts with the forum prior to the filing of the complaint are relevant to the inquiry of whether the defendant purposefully availed itself of the privilege of conducting activities in the forum state prior to the filing of the complaint. *United Phosphorus*, 43 F.Supp.2d at 910–911. Accordingly, this court looks to Daido's contacts and knowledge prior to May 18, 1994, the date Amanda Andersen filed her lawsuit to determine whether personal jurisdiction exists.

Using this outside date, the only evidence in Sportcraft's arsenal not available to demonstrate Daido's knowledge of the distribution system is the September 4, 1995 memorandum wherein Daido indicates that it was arranging for the delivery of surfaces for table games for Ohio State and Indiana University.

pects them to be distributed in neighboring states).

As noted, Daido's knowledge establishes the requisite knowledge of the distribution system sufficient to support a prima facie case of personal jurisdiction in Indiana. However, the court's due process inquiry does not end with this determination. Instead, the court must now consider the quality of those minimum contacts in light of several factors to determine whether the district court's exercise of personal jurisdiction over Defendants violates notions of "fair play and substantial justice." See *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174 ("Once it has been decided that a defendant purposefully established minimum contacts with the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice."). Daido must make a "compelling case" that forcing it to litigate in Indiana would violate traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184–85; *Logan Productions, Inc. v. Optibase Inc.*, 103 F.3d 49, 53 (7th Cir.1996).

■■■ In conducting a fairness inquiry, the *Burger King* court identified five factors for the court to consider. These include:

1. the burden on the defendant
2. the forum state's interest in adjudicating the dispute
3. the plaintiff's interest in obtaining convenience and effective relief
4. the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and
5. the shared interest of the several States in furthering fundamental substantive policies.

*Id.* None of these factors is dispositive; rather, the court must balance all of them. However, in balancing these factors, courts routinely apply a "sliding scale" approach. Under this approach, the fairness

factors are evaluated in light of the strength of the minimum contacts analysis. Where the contacts with the forum state demonstrating that the defendant purposefully availed itself of the forum are strong, a lower showing of fairness suffices to permit personal jurisdiction. See *Burger King*, 471 U.S. at 462, 105 S.Ct. 2174. Conversely, where the contacts supporting the purposeful availment requirement are weak, a court examines the fairness components for a stronger showing of fairness. See *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir.1994); 84 F.3d 560, 568 (".. in assessing whether it may exercise jurisdiction over a particular defendant, a court must weigh the relative strengths and weaknesses of each requirement—that is, depending upon the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry."); *Insurance Company of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir.1981) ("Even if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the [reasonableness prong]"). Applying this analytical framework, the court concludes that personal jurisdiction over Daido in Indiana offends the notions of due process.

### 1. *Burden on Daido of Litigating in Indiana*

■ Daido suggests that the inconvenience of litigating in a foreign judicial system combined with the lengthy travel make it unreasonable to exercise personal jurisdiction in Indiana. To the extent that Daido asserts it is inconvenient for it to litigate in Indiana, this court agrees. However, as noted herein, the same conclusion does not follow if Daido were litigating in New Jersey, where minimum contacts are more strongly established.

The burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction. *Asahi*, 480 U.S. at 114, 107 S.Ct. 1026 ("the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."); *see also, Mid–America Tablewares v. Mogi Trading Co.*, 100 F.3d 1353, 1362 ("the burden imposed on a foreign defendant who is forced not only to travel a great distance but also to litigate in a foreign nation's judicial system is quite great and should be given significant weight in the reasonableness determination."). When the defendant is from another country, this concern is heightened and "great care and reserve should be exercised" before personal jurisdiction is exercised over the defendant. *Asahi*, 480 U.S. at 114, 107 S.Ct. 1026.

The ultimate question, however, is whether exercising personal jurisdiction over Daido is unreasonable in light of the minimum contacts it has established in Indiana. Under the sliding scale approach, it is more reasonable to expect a foreign defendant to traverse to and defend a lawsuit in a distant forum where the defendant's contacts in the forum are strongly established. Given the strong contacts with the forum, a foreign defendant can fairly be said to have reasonably anticipated being haled into that forum. Under these circumstances, the interest of the plaintiff and the forum "justify even the serious burdens placed on the alien defendant." *Asahi*, 480 U.S. at 114, 107 S.Ct. 1026.

At the outset, this court noted that the minimum contacts analysis as it relates to jurisdiction in Indiana was a close one. The evidence presented is far from a smoking gun demonstrating that Daido had knowledge of the distribution system which carried products into Indiana. Rather, the evidence indicates, through reasonable inferences, that Daido had some knowledge that it could be haled into court in Indiana. Given this close question and the weak evidence demonstrating that Daido purposefully availed itself of the Indiana forum, the court agrees that it is unreasonable to require Daido to travel to Indiana to defend this lawsuit. *Ticketmaster–New York, Inc.*, 26 F.3d at 210.

This is especially true in light of the fact that an alternative forum exists where Daido's fairness objection appears to wane. As *Burger King* explained, "even to the extent that it is inconvenient for a party who has minimum contacts with a forum to litigate there, such considerations most frequently can be accommodated through a change of venue." *Burger King*, 471 U.S. at 483, 105 S.Ct. 2174. Compared with the evidence submitted in support of personal jurisdiction in Indiana, by far, a stronger argument exists to support personal jurisdiction over Daido in New Jersey under both the minimum contacts analysis and the fairness component. Daido contracted with a New Jersey corporation, shipped the allegedly defective batting tees to New Jersey and engaged in numerous communications with the state of New Jersey. Again, using the sliding scale approach to the fairness requirement, this strong showing of purposeful availment requires Daido to present a stronger case that exercising jurisdiction in New Jersey is unreasonable. Given the stronger and more direct contacts with the New Jersey forum, it appears much more reasonable for New Jersey to exercise jurisdiction over Daido.

Accordingly, this factor weighs against Indiana's exercise of personal jurisdiction.

### 2. *Indiana's Interest in the Litigation*

The second factor in our reasonableness inquiry examines the forum state's interest in adjudicating the dispute. States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.

*Burger King,* 471 U.S. at 483, 105 S.Ct. 2174. Indiana has little interest in the remaining litigation. The parties satisfied Indiana's interest by settling the personal injury claim of Amanda Andersen and dismissing with prejudice her lawsuit. The remaining third-party plaintiffs are not incorporated in Indiana [10] nor do they have a principal place of business in this state. Indeed, there is no interest in Indiana which is served by conducting this litigation here. Accordingly, this factor weighs against personal jurisdiction in Indiana.

### 3. *Plaintiff's Interest in Convenient and Effective Relief*

The third step in our reasonableness inquiry hinges on whether the Plaintiff may receive convenient and effective relief in another forum. This factor may weigh heavily in cases where a plaintiffs chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit. *See Pacific Atlantic Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1331 (9th Cir.1985). This danger is not present in this case.

Instead, on the record before us, we conclude this factor weighs in favor of declining jurisdiction over Daido in Indiana as well. The third-party plaintiffs in this case have an alternative forum in New Jersey, where they may obtain relief and where personal jurisdiction is more strongly established. New Jersey also has stronger ties to the remaining litigation, as evidenced by Sportcraft's incorporation in New Jersey, the shipment of the offending items there, and the existence of a contract between Sportcraft and Daido. Thus, this factor counsels against jurisdiction in Indiana.

**10.** Sportmart is an Illinois corporation. Wilson is a Delaware corporation. General

### 4. *Efficient Administration of Justice*

In evaluating this factor, courts generally consider where witnesses and evidence are likely to be located. *See Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1552 (11th Cir.), cert. denied, 508 U.S. 907, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993). The parties have not submitted any information concerning the location of their respective witnesses or provided the court with the location of any evidence relevant to their contribution/indemnification claim. A reasonable inference drawn from the nature of this action is that much of the evidence relating to the contribution/indemnification claim is documentary and easily sent into the forum. Accordingly, this factor does not weigh in favor of either party.

### 5. *Policy Arguments*

This factor requires the court to consider the common interests of the several states in promoting substantive social policies. Neither party has suggested, much less shown, any substantive social policies that would be furthered by permitting this case to be heard in Indiana. Thus, this factor does not favor either party.

### *Conclusion*

At some point, the facts supporting jurisdiction in a given forum are so attenuated that the notions of fundamental fairness inherent in the Due Process Clause preclude a district court from exercising jurisdiction over a defendant. While Sportcraft has demonstrated a prima facie case that minimum contacts exist in Indiana over Daido, the evidence supporting such a conclusion is minimal. Further, in examining the above fairness factors in their entirety, this court concludes that to subject Daido to the rigors of litigating in Indiana, which has no genuine interest in its dispute with Sportcraft and with which Daido has only tenuous contacts, would be unreasonable and inconsistent with the notions of "fair play and substantial justice" which form

Sportcraft is a New Jersey corporation.

the foundation of the due process inquiry. Since, this court may exercise jurisdiction over a nonresident defendant only if both minimum contacts exist and the exercise of jurisdiction is fair, this court declines to exercise personal jurisdiction over Daido.

The lack of personal jurisdiction, notwithstanding, this court may, in lieu of dismissing the case, transfer this case to any district court where the action could have been brought. *See* 28 U.S.C. § 1631; *O'Neal v. Hatfield,* 921 F.Supp. 574 (S.D.Ind.1996). In line with this principle, Sportcraft requests this court to transfer this action to the United States District Court for the District of New Jersey.[11] Pursuant to 28 U.S.C. § 1631, a court has authority to transfer any case over which there is a want of jurisdiction, if it is in the interests of justice to do so. As far as relevant, § 1631 provides:

> Whenever a civil action is filed in a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. While this provision, on its face, appears to permit transfer to cure any jurisdictional defect, including the lack of personal jurisdiction, considerable disagreement among the circuits exists as to whether the provision was designed to permit transfer solely to cure want of subject matter jurisdiction. *See Ross v. Colorado Outward Bound School,* 822 F.2d 1524, 1526–27 (10th Cir.1987) (permitting transfer to cure any jurisdictional defect); *Levy v. Pyramid Co. of Ithaca,* 687 F.Supp. 48, 51 (N.D.N.Y.1988), aff'd, 871 F.2d 9 (2d Cir.1989) (limiting transfers to cases where

---

11. Sportcraft requests this transfer pursuant to 28 U.S.C. § 1406. Transfer of venue under this section is proper only if venue does not lie in the original forum. A majority of circuits agree that although venue may be technically proper under 28 U.S.C. § 1391, venue is considered "wrong" if some other procedural obstacle, such as lack of personal jurisdiction over a defendant, prevents the action from proceeding there. *See e.g., Porter v. Groat,* 840 F.2d 255, 258 (4th Cir.1988); *Ellis v. Great Southwestern Corp.,* 646 F.2d 1099, 1105 (5th Cir.1981); *Martin v. Stokes,* 623 F.2d 469, 474 (6th Cir.1980); *Mayo Clinic v. Kaiser,* 383 F.2d 653, 654 (8th Cir.1967); *Muldoon v. Tropitone Furniture Co.,* 1 F.3d 964, 967 (9th Cir.1993); *Roofing & Sheet Metal Serv. v. LaQuinta Motor Inns, Inc.,* 689 F.2d 982, 992 n. 16 (11th Cir.1982). Because venue is considered improper where such procedural obstacles exist, a transfer is permissible under § 1406. Accordingly, Sportcraft urges that "if this court determines that it lacks personal jurisdiction over Daido, venue would also be inappropriate in this forum." (Sportcraft Response, p. 20).

Sportcraft's analysis, however, fails to the extent that it assumes lack of personal jurisdiction over Daido, a third-party defendant, affects proper venue. Venue is determined at the time a plaintiff initiates the lawsuit, not at some later date. *See Bredberg v. Long,* 778 F.2d 1285, 1288 (8th Cir.1985) ("Where venue is proper for the original claims by a plaintiff against a defendant and additional claims are asserted as counterclaims or cross-claims, or come in through impleader, interpleader, or intervention, a venue objection may be unavailable as to the additional claims."); *Moore's Federal Practice,* § 110.06 ("'[Venue statutes] have no application to new claims against existing parties, including counterclaims, cross-claims, or claims in intervention ... In the same manner, third-party claims joining new parties need not meet venue requirements because they are regarded as ancillary to the existing suit."); 6 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1433 (1990) ("According to existing case law, the statutory venue limitations have no application to Rule 14 (third-party claims) even if they would require the third-party action to be heard in another district had it been brought as an independent action."). The thrust of these authorities, as applied in this case, is that lack of personal jurisdiction over a third-party defendant does not affect the appropriateness of the venue choice made by a plaintiff at the outset of the litigation. As a result, since venue in this case was properly established, the court cannot effectuate a transfer pursuant to 28 U.SC. § 1406.

a court lacks subject matter jurisdiction). Despite the disagreement, courts within this circuit have interpreted § 1631 as permitting transfer to cure any jurisdictional defect. *See O'Neal,* 921 F.Supp. at 576 (S.D.Ind.1996) (permitting transfer to Illinois under § 1631 where personal jurisdiction lacking in Indiana); *U.S. v. American River Transportation, Inc.,* 150 F.R.D. 587, 591 (C.D.Ill.1993) (relying on the plain language of § 1631, the purpose of the Act as well as case precedent in finding that § 1631 applies to any type of jurisdiction). Given these authorities, this court concludes that the interests of justice are served by transferring this case to the District of New Jersey, where personal jurisdiction over Daido and the other defendants and cross-defendants exists and venue is clearly established.[12]

## CONCLUSION

Based on the foregoing, defendant's Motion to Dismiss for Lack of Personal Jurisdiction is hereby DENIED and this case is hereby TRANSFERRED to the United States District Court for the District of New Jersey.

---

12. Like Indiana, the New Jersey long-arm statute permits exercise of personal jurisdiction to the fullest limits of due process. *IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254 (3d Cir.1998). Thus, by virtue of its continuous shipments of products into New Jersey and its contacts with Sportcraft, a corporation incorporated in New Jersey and having a principal place of business there, New Jersey has personal jurisdiction over Daido. Similarly, it appears that venue is also proper in New Jersey since pursuant to 28 U.S.C. § 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Given that each of the defendants have conducted business in New Jersey with Sportcraft, these contacts would subject them to personal jurisdiction there. Thus, venue is predicated on 28 U.S.C. § 1391(a)(1) which permits a civil action to be brought in a district where any defendant resides, if all defendants reside in the same state.